# THE UNITED LAUNDRIES CO. & THE ELITE LAUNDRY CO.

## *vs.*

## HARRY L. BRADFORD.

*Negligence: damages; permanent injury; when question for jury.*

A plaintiff had been injured by the fall of a heavy bale of hay from the defendant's warehouse, and at the time of the trial, about a year after the accident, there was evidence that after and since the injury the plaintiff was subject to violent pains in his head, and he complained that he could not attend to business or concentrate his thoughts; that he could not dictate well, but had to write out first in longhand and then read off to the stenographer, and that occasionally he had violent pains in his back; it was *held,* that upon such evidence the court was not authorized to rule that, as a matter of law, no rational inference could be drawn as to the injuries being permanent.                                      p. 367

*Decided December 6th, 1918.*

Appeal from the Baltimore City Court.   (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Joseph Addison* and *Forrest Bramble* (with whom were *Barton, Wilmer & Stewart* on the brief), for the appellants.

*James J. Lindsay,* for the appellee.

URNER, J., delivered the opinion of the Court.

The question of main importance in this case is whether the evidence was legally sufficient to support the inference that the personal injuries sued for were permanent in their effects. The plaintiff was struck by a bale of hay, weighing about 240 pounds, which was thrown down from the third floor of a stable and storage building of the defendants, abutting upon the sidewalk along which the plaintiff was passing. It is not disputed that there was legally sufficient evidence of negligence on the part of the defendants' employees in the handling of the hay which caused the plaintiff's injury. While they testified that they gave ample warning that the hay was about to be dropped upon the sidewalk, the plaintiff's testimony was that he had no notice whatever of such an impending danger. A witness who saw the accident testified that the bale of hay fell directly on the plaintiff and knocked him into the street. After a brief period of unconsciousness the plaintiff was helped to a sitting position on the bale of hay and as soon as a patrol wagon could be summoned he was taken to the University Hospital. He was there examined and attended by Dr. Joseph W. Holland, who testified that his apparent physical injuries were a slight laceration of the forehead, a bruised eye and two broken teeth. An X-ray examination, he said, disclosed a linear fracture of the skull extending several inches upward from the margin of the orbit of the right eye. There was "some muscular spasm in the lumbar region indicating that he had some sprain to his back." "He had an injury to his spine." The principal symptoms were of an injury to the brain, to which Dr. Holland, in his testimony, thus refers: "The brain injury in this case was the result of the fracture and the violence which produced the fracture, and the condition which demanded our attention was not the fracture itself, but the injury to the brain." As a consequence of such injury he "has presented the characteristic picture or symptoms of what we call traumatic neuresthe-

nia, that is a condition which follows and is the result of a
shock to the nervous system." Upon the subject of the prob-
able duration of the condition described, we quote from the
testimony of Dr. Holland as follows: "Q. I ask you from
your treatment of him and your examination also this morn-
ing, your treatment of Mr. Bradford at the hospital during
the time he was there and at home, and upon your examina-
tion this morning, can you give the Court and jury your
opinion in regard to how long he may suffer, as the effects
of that injury? A. I cannot express an opinion about that
definitely at all, because invariably the condition which fol-
lows a head injury, the period of time, I mean, which is
necessary for this to clear up is extremely variable. Q. Well,
some of the symptoms would continue on forever in cases of
that character, would they not, doctor? A. Sometimes." In
the course of his cross-examination Dr. Holland testified that
the plaintiff's nervous condition would improve as and when
he "realizes that he can do things without any suffering"
and thus acquires self-confidence. But he stated that the
plaintiff has no control over the nervous trouble brought on
by the accident. The trial at which this testimony was given
occurred about eleven months after the accident, which hap-
pened in April, 1917. The plaintiff himself, testifying as
to his injuries and their subsequent effects, said that during
the two weeks he spent at the hospital he was flat on his
back, with ice caps on his head for about ten days, and suffer-
ing severe pains in his head and back. Since leaving the hos-
pital and up to the time of the trial, he said, "I have fre-
quent headaches, sometimes are more violent than others.
The least little excitement and I am pretty certain to have a
violent headache. As a rule, it abates very much when I
retire at night. Some mornings it is gone, but I am just as
likely to have one the next day as not, although there are
sometimes possibly for a week that I won't have more than
one; again I will have two or three in a week." The pains
in the lower part of his back, he said, "have almost disap-

peared, although I notice them occasionally, but the pains up rather just a little below my shoulders are quite pronounced when I am on my feet very long at a time." Before the accident he was not subject to pains in his back or headaches. Prior to that time also he had slept very well, but since then he is often restless and unable to sleep. After leaving the hospital he went to his mother-in-law's, where he was confined to bed for four weeks, and afterwards allowed to sit up a short time each day until, in the course of a further period of two weeks, he could sit up for the entire day. Then he returned to his own home. From that time until about the first of the following November he "hobbled about on a cane," but he has since been able to get along without that support. In answer to the question as to when he was able to go back to work or business again, he said: "Well, I can hardly say that I believe I am fit now to engage in business, although through lack of finances I felt forced to do so. I have difficulty in collecting my thoughts. I have difficulty in concentrating my mind on matters of importance. I practically have no memory, it seems, because many things that are of importance I forget unless I make a note of them in a little memorandum book I always carry; but I began work, I think, the second week—I am not quite sure of that—the second week of January." Prior to his injury, he said, his memory was very good and he had no difficulty in concentrating his mind. He had previously been engaged in the real estate business for several years, and since January last he has had employment in an enterprise of that nature. Since returning to work his health has not improved, but he has been affected more by headaches than he was during the two or three months preceding; "because," to quote his language, "there were matters of business that came up that really should have had careful thought and I do not feel able to do that. I notice particularly in dictating a letter it is very difficult for me to concentrate my mind, and quite a good many of my letters have first been written

by myself in longhand and then read to the stenographer from that notation."

The references we have thus made to the testimony in the record are sufficient to show that the trial Court was justified in its refusal to rule, in effect, that no rational inference as to the permanency of the plaintiff's injuries was possible to be drawn from the evidence. Such a ruling would have been involved in the granting of the defendants' ninth prayer, which sought to instruct the jury that there was no legally sufficient evidence that the plaintiff was permanently injured, and in the sustaining of the defendants' exception to the plaintiff's prayer which authorized the jury, in estimating the damages, if they found for the plaintiff, to consider whether the injury "is in the nature permanent, and how far, if at all, it is calculated to disable him from engaging in employments for which, in the absence of such injury, he would have been qualified." In view of the testimony we have recited, the Court properly rejected the prayer and overruled the exception. The nature and cause of the original injury, the extraordinary force of the blow by which it was inflicted, and the fact that its painful and disturbing effects were still persisting, to the extent described in the testimony, when the plaintiff's condition was under investigation at the trial, nearly a year after the accident, were considerations tending to support an inference that the injury was permanent. Certainly, in the presence of such significant facts, the contrary conclusion could not be rightfully declared by the Court to be necessary as a matter of law.

In the case of the *Agricultural and Mechanical Association of Washington County* v. *Gray,* 118 Md. 600, the plaintiff's right shoulder was injured and two of his ribs were broken in a fall occasioned by the giving way of a railing on which he was leaning. Upon the question of the probable permanency of his injury the plaintiff testified that he suffered with his right arm for several months after the accident, and had not much use of it, and that up to the time

of the trial, which was five months after he had been injured, he was unable to use that arm to hang up clothes in the shop where he was employed because of the pain in his arm and shoulder caused by such an effort. The physician who attended the plaintiff testified that the injury to his shoulder was an internal contusion and that nerves were bruised with the flesh. The plaintiff had previously been an invalid for a long time, suffering with curvature of the spine, and the injury to his shoulder appeared to have affected his nervous system, but according to the doctor's testimony the physical injuries resulting from the accident had been cured. It was held that in view of such proof as we have indicated, the trial Court was right in overruling a special exception to one of the plaintiff's prayers which submitted to the jury the question as to whether his injuries were permanent in their nature. In our opinion the proof in the present case was sufficient to support a similar ruling.

The defendants' first prayer was properly rejected. It proposed that a verdict be directed in favor of one of the defendant corporations which controlled and conducted, through the other defendant company, the business in the course of the operation of which the accident to the plaintiff occurred. No question was raised in the argument as to the rejection of this prayer.

By their second prayer, which was also refused, the defendants asked to have the jury instructed that there was no evidence legally sufficient to entitle the plaintiff to recover for any medical, hospital or nursing expenses. Nothing was said in the testimony as to the amount of such expenses and no mention of that subject was made in the plaintiff's granted prayer referring to damages. Inasmuch as any right or claim which the plaintiff might have urged for the recovery of the costs of the treatment and attention necessitated by his injury was disregarded in the proof and in the only instruction defining the basis upon which damages could be awarded, and as the verdict of $5,000 rendered by the jury

was evidently intended as compensation for the injuries sustained, and could not well have been appreciably influenced by any conjecture as to the probably moderate expenses incurred by the plaintiff during the comparatively brief period when he required medical and nursing service, we are unable to find in the rejection of the defendants' prayer upon this point an adequate reason for reversing the judgment and remanding the case for another trial.

The third prayer of the defendants proposed to have the jury instructed that the plaintiff was not entitled to recover for any suffering or anxiety which his wife might have experienced as a result of the accident. There was an incidental reference in the plaintiff's testimony to his wife's concern and distress on account of his condition after he was injured, but no suggestion appears to have been made that his damages should for that reason be augmented, and we think the prayer of the defendants on that subject was not needed for the protection of their interests. There was no error in its rejection.

The defendants' eighth and tenth prayers, which were refused, are to the same general effect as their sixth and fifth prayers respectively, which were granted. The theory of the defendants' eleventh prayer was not supported by the evidence, and its rejection was therefore proper.

All of the exceptions in the record have now been reviewed and no reversible error has been discovered.

*Judgment affirmed, with costs.*