RAYMOND W. SCHWEITZER, ETC. *v.* JOHN
DALE SHOWELL, III ET UX.

[No. 82, September Term, 1973.]

*Decided January 2, 1974.*

538

The cause was argued before MENCHINE, DAVIDSON and MOORE, JJ.

*Thomas L. Lilly* and *John W. T. Webb*, with whom were *Webb, Burnett & Simpson* on the brief, for appellant.

*Patrick L. Rogan*, with whom were *Sanford & Bolte* and *Cathell & Ewell* and *Richardson, Rogan, Anderson & Heland* on the brief, for appellees.

MENCHINE, J., delivered the opinion of the Court.

John Dale Showell, III, suing for damages for personal injuries and property damage, obtained judgment against Raymond W. Schweitzer for $26,566.00 in the Circuit Court for Wicomico County. In the same proceedings Ann L. Showell recovered judgment for $1800.00 for her personal injuries, and the Showells jointly recovered judgment for $1.00 for loss of consortium. A general appeal from the judgments was taken but appellant does not press here for reversal of the joint judgment or the judgment of Mrs. Showell.

The contested judgment arose out of an automobile accident in Ocean City, Maryland on August 27, 1967. The case was not tried until November, 1972. The negligence of the appellant and the absence of contributory negligence of the appellee is conceded.

Appellant attacks the judgment for $26,566.00 on two

fronts. First, he contends that the trial judge erroneously rejected his peremptory instructions that a subsequent injury to the appellee was not causally related to the accident of August 27, 1967. Secondly, he contends that evidence relating to damages for the loss of use of appellee's motor vehicle was improperly admitted and his peremptory instruction rejecting such a claim for damages improperly was denied by the trial judge.

### Damages for Personal Injury

The requested peremptory instructions, rejected by the trial court, would have required the jury to refrain from considering any injury or disability associated with an incident occurring on Assateague Island in October, 1968. The jury was permitted to determine whether such injury and disability were causally related to the accident of August 27, 1967 with reasonable probability and, if so, to consider the same in assessing damages.

This issue necessitates a somewhat detailed description of Showell's physical condition at the time of the accident of August, 1967; the immediate sequelae of that injury; a description of the incident occurring on Assateague Island in October, 1968 and its sequelae; and the testimony of the appellee and two medical witnesses with respect thereto.

Determination of the question whether there was legally sufficient evidence of causation between the accident and the Assateague event requires this Court to assume the truth of all evidence in the case tending to sustain the claim, as well as all inferences of fact reasonably and fairly deducible therefrom. *Buchanan v. Galliher*, 11 Md. App. 83, 87, 272 A. 2d 814, 817.

So viewed, the record shows:

John Dale Showell, III, while operating his automobile in Ocean City, Maryland was struck by the vehicle of Raymond W. Schweitzer. He was "twisted — thrown — facing the left side of the car striking the interior of the automobile and cut [his] leg. His left side was hurt with pain from the belt line down in the back and side."

Dr. Francis J. Townsend, Jr., a lifelong friend, was also

his family doctor. Dr. Townsend thus described the history received by him: "Injured in auto accident at 7:30 P.M., yesterday. Chief complaint — neck stiff; hurt in the midcervical area down the back to midthoracic area; left leg numb from hip down lateral thigh and below the knee — in short, down the whole leg. He was tender over his left hip, and numb down the lateral side of the left thigh, and he had diminished sensation from the knee to the foot. He had a laceration 1 to 1¹/₄″ long on his left foreleg. He had had no difficulty in the area for two years."

Dr. Townsend's impression at the time was that Showell probably had a re-injury to a disk or to the sciatic nerve. He had no reflex in his left Achilles tendon, and little or no patellar reflex on the left, although rotation caused pain. Dr. Townsend said Showell's left leg problems were due to the disk injury. Physical therapy was ordered and medicines given by mouth for relief of muscle spasm and pain. Dr. Townsend said that the accident of August, 1967 "caused probably a re-injury to the disk or sciatic nerve on that side."

It is to be noted here that both Dr. Townsend, testifying in behalf of the appellee, and Dr. Frank E. Poole, testifying on behalf of appellant, had examined Showell in December, 1960 and had agreed upon a diagnosis, at that time, that Showell was suffering from a "herniated lumbar disk irritating at least one of the nerves going into the sciatic nerve and the left leg muscle."

Showell testified, without evidence to the contrary, that the condition described by Drs. Townsend and Poole in 1960 abated without continuing complaints and that he was wholly free of any symptoms for a number of years prior to August, 1967. Dr. Townsend, as heretofore stated, testified that the subject accident had re-injured the intervertebral disk. Dr. Poole, on the other hand, who examined Showell in behalf of the defendant on February 7, 1968, made no such diagnosis. Dr. Poole stated that the "type of · wooden numbness * *· * a stocking or glove effect" as he described Showell's complaints, "is usually thought of as an emotional factor because the nerve does not follow that sort of

pattern." However, Dr. Poole admitted on cross-examination that it was possible that Showell suffered a herniated disk in the automobile accident of August 27, 1967. Dr. Townsend referred Showell to Dr. James G. Arnold, a neurosurgeon, on May 22, 1968 because of his continuing complaints. Dr. Arnold did not testify.

Showell testified that prior to the subject accident in August, 1967, he had been extremely active in the management of his motel business, doing most of the day to day maintenance of the premises, including painting and vacuuming. He said he was compelled to curtail his physical activities after the subject accident, saying: "I am embarrassed at the little I do now." He said that his symptoms at the time of trial were similar to the symptoms immediately following the subject accident, adding that: "* * * all my life I have been in good physical shape. I have been in the habit of being active, extremely active, and I am no longer that way because I have just gotten—gotten less and less active. I do less and less physical exertion and less exercises."

In early October, 1968, Showell, in keeping with a custom of some years duration, celebrated the end of the Ocean City summer season by joining half dozen other couples at a vacation lodge on Assateague Island. While operating a four-wheel drive vehicle along the beach, Showell, Dr. Townsend and another man observed a vehicle stuck in the sand. An attempt was made by the three to extricate the vehicle. Dr. Townsend attached a towline to the four-wheel drive vehicle while Showell and the other man pushed the stalled vehicle from behind. This incident and its sequelae are the cardinal sources of the instant appeal.

Showell thus described the incident: "I had done it dozens and dozens of times before that in my life and I never would have believed that this could happen — * * * it was an everyday occurrence. * * * prior to the accident in 1967 * * * my leg had never given way * * * the same leg that was injured in this accident * * * my leg just * * * went out of place * * * [my] left leg gave way. * * * suddenly [I] had no strength — [in my] left leg [and] I fell to the ground. * * * I just collapsed * * * it was a belly flop fall * * *."

In the course of general testimony describing the effects of disk injury, Dr. Townsend had said the condition "will cause pain, a loss of use, change in the sensation, decreased or absent reflexes in the areas where the nerves work." In the subject case he related those effects to the left leg of Showell. Cross-examined specifically with respect to the causal connection of the Assateague incident Dr. Townsend was asked:

> " * * * Well, now, moving forward to the incident on Assateague Island, you have testified to an injury to the left knee on Assateague.
>
> A  Yes.
>
> Q  And I believe you have already testified on deposition, have you not, that in your opinion that knee injury is not related to the auto accident?
>
> A  Well, I don't think the fact that his knee was injured at that moment was directly due to the automobile accident. Mr. Showell, however, in his record to me in taking a recent history has felt that his — the weakness of his muscle could have resulted in his leg giving way and injuring the knee.
>
> Q  You would not yourself, however, have an opinion within a reasonable degree of medical certainty that the knee injury was related to the automobile accident, would you?
>
> A  Only in that if his muscle had become weak enough so that he wasn't as stable as he had been before it, it might have played a part in it. I don't know, frankly."

Dr. Poole, called as a witness for the appellant, testified that on examination of Showell a week before trial, he had noted a change of symptoms from the time of his examination on February 7, 1968. He stated that his current examination showed "that there was nerve root compression, probably on the basis of herniated disk." He

testified in substance that the condition could have been produced by the activities of Showell in pushing the vehicle on Assateague, saying it "could very well herniate a disk or reherniate one that had been out and apparently improved. If he was only leaning on it and pretending to push probably the person [sic] wouldn't have bothered it. If he did it with great endeavor, giving it the gungho treatment, I would almost expect it to occur. That's what I meant a moment ago when I said it depended on how hard he was pushing." On cross-examination, Dr. Poole admitted that "if it were true that there was no injury to the back [in the Assateague incident] only to the knee, then I would have to change my opinion, yes."

Appellant contends that the issue of a causal connection between the accident of August 27, 1967 and the Assateague incident of October, 1968 "is a complicated medical question involving fact finding which properly falls within the province of medical experts * * * [and] proof of the cause must be made by such witnesses," citing *Wilhelm v. State Traffic Comm.*, 230 Md. 91, 185 A. 2d 715. The validity of that rule of law and its application to the issue presented here is plain. We find that the evidence previously set forth brings the subject litigation within the rule therein announced.

The case of *Charlton Bros. Co. v. Garrettson*, 188 Md. 85, 51 A. 2d 642, and its progeny [1] are dispositive of the issue. In *Charlton* it was said at page 94 [646]:

> "The law requires proof of probable, not merely possible, facts, including causal relations. Reasoning *post hoc, propter hoc* is a recognized logical fallacy, a *non sequitur*. But sequence of events, plus proof of *possible* causal relation, may amount to proof of *probable* causal relation, in the absence of evidence of any other equally probable cause."

It is true that no *single witness*, medical or lay,

---

1. Examples are:
   *Vroom v. Arundel Gas Co.*, 262 Md. 657, 663, 278 A. 2d 563, 566.
   *Sun Cab Co. v. Carter*, 14 Md. App. 395, 408, 287 A. 2d 73, 80.

unequivocally established the causal connection between the subject accident and the Assateague injury. However, the jury could find probable causal connection from a selective consideration of the entire record. Under the testimony of either or both of the doctors the jury would be justified in concluding the Assateague incident probably was caused by a weakness of the left leg that in turn had been occasioned by the accident of August 27, 1967, if it accepted the testimony of Showell.

In *McDougle v. Woodward & Lothrop, Inc.*, 312 F. 2d 21, the Court of Appeals for the Fourth Circuit, citing *Charlton, supra*, with approval, and announcing Maryland law, said at page 23:

> "Under the circumstances the question of whether or not the cause of the later disease was a series of events set in motion by the defendant's negligent act was a question properly submitted to the jury upon the evidence of plaintiff's treating physician. While the witness conceded that many authorities held that nobody knew the cause or causes of dermatitis herpetiformis, even so, no authority in the field was prepared to reject categorically the theory that nervous tension or strain could bring on the disease and that in his opinion this was the cause in the plaintiff's case. The refusal of plaintiff's witness to rule out the possibility of other causes does not bring the case within those Maryland decisions which hold that the evidence must show probability—not mere possibility."

Under these circumstances we are not permitted to substitute our judgment for that of the jury. A motion for a directed verdict on any issue should not be granted if there is any relevant and competent evidence from which a rational mind can infer a fact in issue. *U-Haul Co. v. Rutherford*, 10 Md. App. 373, 380, 270 A. 2d 490, 494.

### Damages for Loss of Use of Vehicle

Documentary evidence (Exhibit 8) introduced by the plaintiff himself makes quite clear:

(a) that plaintiff made no effort to effect repairs to the damaged vehicle for 11 months following the collision; and

(b) that such repairs could have been completed by an automobile mechanic working 18 hours.

In spite of this circumstance, the trial court admitted into evidence, over appellant's objection, (Exhibits 1 through 7) bills for rental of a substitute vehicle covering a period of seven months at a cost of $2189.60.

The Maryland decisions make plain that damages for the loss of use of a vehicle must be restricted to "such reasonable period as * * * the evidence [shows] the plaintiff was deprived of the use of its automobile by reason of said accident." *W.B. & A. Rwy. Co. v. Fingles*, 135 Md. 574, 580, 581, 109 A. 431. See also *Taylor v. King*, 241 Md. 50, 53, 213 A. 2d 504; 169 A.L.R. 1087n, 1117n.

There was no foundation laid to show why the plaintiff would be entitled to $2189.60 for seven months loss of use of a vehicle that could have been repaired by 18 hours work for $466.89. In the absence of such foundation, the admission into evidence of bills for charges for loss of use was improper. *Metropolitan Auto Sales v. Koneski*, 252 Md. 145, 154, 249 A. 2d 141, 146; *Wolf v. Levitt & Sons*, 267 Md. 623, 631, 298 A. 2d 374, 378.

While the admission of the bills was clearly improper, we do not think the error justified a reversal. However, we shall require the judgment in favor of John Dale Showell, III to be reduced by $2189.60. Rule 1075. *Metropolitan Auto Sales*, *supra*, p. 154 [146]; *Cf. Brooks v. Fairman*, 253 Md. 471, 476, 252 A. 2d 865.

> *Judgment in favor of Ann L. Showell for $1800.00 affirmed; joint judgment in favor of John Dale Showell, III and Ann L. Showell for $1.00 affirmed; judgment in favor of John Dale Showell, III reduced to $24,376.40 and as reduced affirmed.*
>
> *Costs to be paid by appellant.*