768 A.2d 56

**Diane DESUA**

v.

**Scott YOKIM.**

**No. 2429, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

March 5, 2001.

Laura Tise Magnuson, Germantown, for appellant.

James A. Sullivan (James A. Sullivan, Jr. and Sullivan & Talbott on the brief), Rockville, for appellee.

Argued before MURPHY, C.J., and ADKINS, and ROBERT F. FISCHER, (Retired, Specially Assigned), JJ.

MURPHY, Chief Judge.

The parties to this appeal from the Circuit Court for Montgomery County were involved in an automobile accident that occurred on September 9, 1993 in Rockville, Maryland. As a result of the accident, Diane DeSua, appellant, ultimately filed a negligence action against Scott Yokim, appellee,[1] seeking "the amount of One Hundred Fifty Thousand Dollars

---

1. Appellant's complaint was filed on September 9, 1996.

($150,000.00) in compensatory damages plus interest and costs." Appellee filed a pretrial motion "for partial summary judgment" on the ground that "the [appellant] has failed to designate any expert witness [and] pursuant to her Answers to Interrogatories, the [appellant] has represented that she does not intend to call any expert witnesses at trial." Appellant filed an opposition to that motion in which she stated:

> To put this matter in perspective, this case involves a relatively simple, rear-end accident. It is of the sort that does not justify huge expenses, including multiple medical experts ... [Appellant] asserts that under [*Vroom v. Arundel Gas Co.,* 262 Md. 657, 278 A.2d 563 (1971), and *Simco Sales v. Schweigman,* 237 Md. 180, 205 A.2d 245 (1964) ], she will be able to meet her burden both as to the cause of her illness as well as the reasonableness of the medical expenses, without expert testimony.

At the conclusion of a hearing on appellee's motion, the Honorable Martha G. Kavanaugh announced the following conclusions:

> ... [U]nder the case law I believe that you need an expert in a soft tissue injury to establish causation, and reasonableness, and fairness in the medical bills.

> ... I believe you do need an expert in the soft tissue injury to establish causation because there are many reasons why someone might have a neck injury besides a car accident.

> ... [F]irst you would have to show that the accident caused the injuries, and then from the injuries you go to the pain and suffering and lost wages.

Judge Kavanaugh entered summary judgment in favor of appellee, and appellant now presents the following questions for our review:

1. DID THE COURT COMMIT REVERSIBLE ERROR IN CONCLUDING AS A MATTER OF LAW THAT EXPERT TESTIMONY WAS NEEDED TO ESTABLISH THE REASONABLENESS AND NECESSITY

OF MEDICAL EXPENSES IN SOFT TISSUE INJU-
RY CASES?

2. DID THE COURT COMMIT REVERSIBLE ERROR
IN CONCLUDING AS A MATTER OF LAW THAT
EXPERT TESTIMONY WAS NEEDED TO ESTAB-
LISH A CAUSAL CONNECTION BETWEEN DE-
FENDANT'S NEGLIGENCE AND PLAINTIFF'S
INJURIES?

For the reasons that follow, we shall answer "no"?to ques-
tion one and "not in this case" to question two. We shall,
therefore, affirm the judgment of the circuit court.

### Factual Background

The accident occurred after appellant had stopped her
vehicle at a yield sign, and was waiting to turn right onto
Interstate 370 from Fields Road. According to appellant, her
vehicle was struck in the rear by the vehicle that appellee was
driving, and she was "thrown forwards and then backwards
and suffered immediate pain in her neck." Appellant con-
tends that as a result of her injuries, she incurred medical
costs,[2] endured pain and suffering, and missed a total of 186
hours from her job.[3]

### Procedural History

The circuit court entered a Scheduling Order that required
appellant to designate her expert witnesses by January 19,

---

**2.** Shortly after the accident, appellant went to the Shady Grove Adven-
tist Hospital. She was treated by Dr. Frank Seinsheimer of the Greater
Washington Orthopaedic Center for a cervical strain. Appellee con-
tends that although appellant initially sought treatment at the Shady
Grove Hospital on the date of the occurrence, her next visit to a health
care provider was not until eighteen (18) days later. It was at that time
that appellant saw Dr. Frank Seinsheimer, M.D. with the Greater
Washington Orthopaedic Group. Appellee indicates that appellant had
approximately twenty (20) subsequent visits with Dr. Seinsheimer
through February 24, 1994. Appellant's medical bills totaled
$2,777.49, plus $47.19 in prescriptions.

**3.** Appellant claimed $8,588 in lost wages.

1999.[4]  Appellant did not designate expert witnesses.  On May 27, 1999, appellee filed a motion for partial summary judgment on grounds that appellant had not identified any witnesses who would offer expert testimony as to the fairness, reasonableness, and necessity of her medical bills.  On July 8, 1999, the Honorable Ann S. Harrington denied the motion without prejudice, and ruled that appellee could seek such relief from the trial judge.  On July 9, 1999, appellant filed a pre-trial statement in which she disclosed her intention to introduce her medical bills through billing managers employed by her health care providers.[5]

Trial was to commence before Judge Kavanaugh on October 25, 1999.  On the morning of trial, by way of motion in limine, appellee again presented the arguments previously made in support of his motion for partial summary judgment.  As

---

4.  The Scheduling Order issued by the court stated:
> This ORDER is your official notice of dates and required Court appearances.  *ANY* MODIFICATIONS OF THIS SCHEDULING ORDER MUST BE REQUESTED BY WRITTEN MOTION AND FILED *BEFORE* THE COMPLIANCE DATE(S). . . . Failure to comply with all terms may result in dismissal, default judgment, refusal to let witness testify, refusal to admit exhibits, the assessments of costs and expenses, including attorney fees, or other sanctions.

5.  Appellant's Statement included the following requested instruction:
> 1.  Plaintiff has the burden of proving by a preponderance of the evidence that she sustained physical injury and that said injury was proximately caused by Defendant's negligence.  (Instruction defining proximate cause.)
> It is not necessary that the existence of physical injury and the source of its cause be proved by expert medical testimony.  When the disability develops at the same time as, or within a reasonable time after, the negligent act, expert medical testimony is not needed.
> In addition, where the connection between the negligent act and the injury is clearly apparent from the illness itself and the circumstances surrounding it, expert medical testimony is not needed.  Further, where the cause of the injury relates to matters of common experience, knowledge, or observation of laymen, expert medical testimony is not needed.
> *Vroom v. Arundel Gas Co.*, 262 Md. 657, 278 A.2d 563, 565 (1971).
> 2.  Plaintiff reserves the right to request additional non-pattern instructions in light of Defendant's instructions (not yet submitted) as well as the evidence.

stated above, Judge Kavanaugh concluded that appellant needed expert testimony to introduce her medical bills into evidence and to generate a jury question on the issue of causation. This appeal followed.

## Discussion

### I.

The following transpired during the summary judgment hearing:

[THE COURT:] ... this is a neck injury, a soft tissue injury?

[APPELLANT'S COUNSEL:] Yes.

[THE COURT:] How in the world are we supposed to know that it exists unless we have expert testimony about it?

* * *

[APPELLEE'S COUNSEL:] ... I don't think without an expert you can establish the predicate that you have to get to a jury on these issues.

We are persuaded that Judge Kavanaugh was "legally correct" in concluding that appellant needed to provide expert testimony to introduce her medical bills.[6] "In order for the amount paid or incurred for medical care to be admissible as evidence of special damages, there ordinarily must be evidence that the amounts are fair and reasonable." *See Shpigel v. White,* 357 Md. 117, 128, 741 A.2d 1205 (1999). "Evidence of the amount or payment of medical bills does not

---

**6.** Summary Judgment is appropriate when there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Md. Rule 2–501(e). We review the issue of whether Judge Kavanaugh was "legally correct." *Pittman v. Atlantic Realty Co.,* 127 Md.App. 255, 269, 732 A.2d 912 (1999), *rev'd on other grounds,* 359 Md. 513, 754 A.2d 1030 (2000). "There must be evidence upon which the jury could reasonably find for the non-moving party," to defeat a motion for summary judgment. *Id.* at 270, 732 A.2d 912. Moreover, "a mere scintilla of evidence will [not] suffice to support the non-movant's position." *Id.*

establish the reasonable value of the services for which the bills were rendered or justify recovery therefor." *Id.* (quoting *Kujawa v. Baltimore Transit Co.,* 224 Md. 195, 208, 167 A.2d 96 (1961)).

In *Thomas v. Owens,* 28 Md.App. 442, 445, 346 A.2d 662 (1975), this Court held that a physician was qualified to testify as to the reasonableness of the charge by the Public Health Service Hospital.[7] *Id.* In the case *sub judice,* appellant relies on *Simco Sales v. Schweigman,* 237 Md. 180, 205 A.2d 245 (1964) for the proposition that the billing manager is competent to satisfy the "other evidence" requirement. *Schweigman* did hold that the Director of Admissions and Accounts at the Baltimore City Hospitals was competent to establish "the fair and reasonable value of hospital and surgical services provided to the [appellee] by the Baltimore City Hospitals." *Id.* at 188–189, 205 A.2d 245. Appellant, however, was also required to prove that her medical treatments were "necessary." *Metropolitan Auto Sales v. Koneski,* 252 Md. 145, 154, 249 A.2d 141 (1969). While a billing manager is competent to establish that a particular bill is fair and reasonable by comparing what other hospitals charge for a particular procedure, a billing manager's familiarity with the customary charge for services afforded to a patient does not make such a witness competent to explain why the patient's physician chose a particular type of treatment. Thus, where the issue of *necessity* is raised, the plaintiff cannot introduce medical bills through a billing manager.[8] Appellant's use of the billing

---

7. Owens, plaintiff-appellee, had consulted Dr. Stuart H. Brager for an examination and evaluation. At trial, Dr. Brager testified over objection that the bill from the Public Health Service Hospital was, according to Baltimore City medical standards, fair and reasonable for the hospital visits and treatments. The plaintiff-appellee then offered into evidence the bill because Dr. Brager's testimony furnished independent evidence that the charge set forth was reasonable. The trial court admitted the bill into evidence over defendant-appellant's hearsay objection, and this Court affirmed. *See Thomas,* 28 Md.App. at 444–45, 346 A.2d 662.

8. Nothing in *Schweigman,* which did not involve the issue of whether the patient's treatment was *necessary,* indicates that a billing manager

manager to establish the *necessity* for her medical bills does not satisfy that essential foundational requirement.

## II.

Appellant also contends that Judge Kavanaugh erred in concluding that, as a matter law, expert testimony was needed to establish a causal connection between appellee's negligence and appellant's injuries. The following transpired at the summary judgment hearing:

[APPELLANT'S COUNSEL:] ... This Court can find that because we will present that the injury occurred immediately, that prior to the accident she had no neck pain, she was free of injury; immediately at the time of the accident she started experiencing pain.

We are not proving it was ileitis or paralyzed finger, anything that would cause a doctor to come in and explain why these symptoms were occurring. It is a neck injury that many persons in their common experience can experience or have known others to experience by virtue of a rear-end car collision.

[THE COURT:] But you can have it from arthritis, you can have it from age—

[APPELLANT'S COUNSEL:] She will testify she does not have arthritis.

[THE COURT:] Well she—how does she know because arthritis starts when you are young and it becomes worse as you grow older; you might not have any symptoms for a while.

[APPELLANT'S COUNSEL:] That could be argued by Mr. Sullivan in closing. That fact that he didn't get his own expert is his decision. Nothing stopped him from getting an

---

can testify about anything other than (1) the contents of hospital records made in the usual course of business, and (2) the fair and reasonable value of the services provided by the hospital. 237 Md. at 189, 205 A.2d 245.

expert to contest what we are going to say happened, and how she felt afterwards; that is clearly within her ability. The subjectiveness is something the jury is to decide at the time that they get this case, and that is why Judge Harrington denied it originally.

\* \* \*

[THE COURT:] What about causation? How in the world would you establish causation?

[APPELLANT'S COUNSEL:] Causation is what we just argued under Wilhelm. We have the opportunity to prove: A) That the immediate—should have the opportunity to prove—that the injury was immediately. Also that it was within the common experience of the jurors to find that that sort of sprain can occur after an accident, and the subjectivity issue is one that goes to the jury as to whether they believe she has the pain or not; that is within their realm.

[THE COURT:] All right. Well, I have a different take on the Wilhelm, the Craig, the Vroom, and the Craft cases, and for that reason, I believe you do need an expert in the soft tissue injury to establish causation because there are many reasons why someone might have a neck injury besides a car.

In *Wilhelm v. State Traffic Safety Comm.*, 230 Md. 91, 185 A.2d 715 (1962), the Court of Appeals stated that

[t]here are, unquestionably, many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony. Particularly is this true when the disability develops coincidentally with, or within a reasonable time after, the negligent act, or where the causal connection is clearly apparent from the illness itself and the circumstances surrounding it, or where the cause of the injury relates to matters of common experience, knowledge, or observation of laymen.[9]

---

9. Although the Court of Appeals concedes this point, it quickly supports its holding, stating "where the cause of injury claimed to have resulted

*Id.* at 99, 185 A.2d 715.[10] The Court held, however, that "expert testimony was required in order to establish a causal nexus between a motor vehicle collision" and "emotional disturbances in [the plaintiff] sufficient to evoke, subconsciously, grossly exaggerated symptoms." *Id.* at 101, 185 A.2d 715. In *S.B. Thomas, Inc. v. Thompson,* 114 Md.App. 357, 689 A.2d 1301 (1997), this Court noted that case law on this issue is very fact specific, and that

> [a] genuine jury issue as to the causal relationship between an earlier injury and a subsequent trauma may sometimes be generated, even in the absence of expert [medical] testimony, when some combination of the following circumstances is present: 1) a very close temporal relationship between the initial injury and the onset of the trauma; 2) the manifestation of the trauma in precisely the same part of the body that received the impact of the initial injury; 3) as in *Schweitzer v. Showell, [*19 Md.App. 537, 313 A.2d 97 (1974),*]* some medical testimony, albeit falling short of a certain diagnosis; and 4) an obvious cause-and-effect relationship that is within the common knowledge of laymen.

*Id.* at 381–82, 689 A.2d 1301. *See also American Airlines v. Stokes,* 120 Md.App. 350 at 355–357, 707 A.2d 412 (1998), and

---

from a negligent act is a complicated medical question involving fact finding which properly falls within the province of medical experts (especially when the symptoms of the injury are purely subjective in nature, or where disability does not develop until some time after the negligent act), proof of the cause must be made by such witnesses." *Wilhelm* at 100, 185 A.2d 715.

**10.** *Cf. Cluster v. Upton,* 165 Md. 566, 569, 168 A. 882 (1933) (crooked condition of plaintiff's finger, as exhibit at the trial, eleven months after the accident, justified the court in leaving to the jury the question of permanency in the injuries, although there was no expert testimony in that regard); *Wash., B. & A. Elec. R. Co. v. Cross,* 142 Md. 500, 510–11, 121 A. 374 (1923)(evidence warranted an inference as to the permanence of plaintiff's injuries which justified the refusal of an instruction that there was no legally sufficient evidence of any permanent injury); *United Laundries Co. v. Bradford,* 133 Md. 363, 367, 105 A. 303 (1918)(court not authorized to rule that, as a matter of law, no rationale inference could be drawn as to injuries from a year ago being permanent).

*Hunt v. Mercy Medical,* 121 Md.App. 516 at 538–542, 710 A.2d 362 (1998).

■ We agree with Judge Kavanaugh that the cause-and-effect relationship in this particular case is not obvious enough to be considered "within the common knowledge of laymen." [11] Here, appellant claims that she was "thrown forwards and backwards" as a result of what she described as "a relatively simple, rear-end accident" that "is of the sort that does not justify huge expenses." Yet, she is seeking "One Hundred Fifty Thousand Dollars ($150,000.00) in compensatory damages plus interest and costs." Because of (1) the disparity between the damage to appellant's vehicle and the amount of her personal injury claim,[12] and (2) the amount of time between her emergency room visit and her appointment with a treating physician,[13] the question of causal connection that is

---

11. *Compare Shpigel v. White,* 357 Md. 117, 130, 741 A.2d 1205 (1999)(where there was "no obvious cause-and-effect relationship" between the accident and the claimed total disability "that is within the common knowledge of laymen"); *Larson v. State Ind. Acc. Comm.,* 209 Or. 389, 307 P.2d 314, 318 (1956)(claimant must show by expert testimony causal connection between accident and alleged disability to his back developing sometime after accident); *Spivey v. Atteberry,* 205 Okla. 493, 238 P.2d 814, 816 (1951)(recovery denied where no expert testimony showing that injuries resulted from dog bite); *Cobb v. Baldwin,* 178 So. 743, 752 (La.App.1938)(where alleged injury appeared months after negligent act, "very strong testimony" was needed to connect injury with accident); *Inter Ocean Oil Co. v. Marshall,* 166 Okla. 118, 26 P.2d 399, 403–04 (1933)(expert testimony needed for miscarriage allegedly caused by exposure to oil); *City of Pawhuska v. Crutchfield,* 155 Okla. 222, 8 P.2d 685, 686 (1932)(prayer permitting recovery for permanent injuries based solely upon subjective symptoms held erroneous in the absence of expert testimony); *Anderson v. Baxter,* 285 Pa. 443, 132 A. 358, 358–59 (1926)(claim disallowed for want of expert testimony as to causal connection where employee accidently cuts hand, it gets infected, and 81 days later he dies of pneumonia); *McCrosson v. Phil. Rapid Transit Co.,* 283 Pa. 492, 129 A. 568, 569 (1925)(recovery denied when Lobar pneumonia developed 7 weeks after accident and no expert testimony was provided to effect that accident "most probably" caused it).

12. Appellant's claim for lost wages exceeds her claim for property damage.

13. See footnote 2.

presented by the facts of this case cannot be submitted to the jury in the absence of expert testimony.[14] We agree with appellee's contention that in the absence of expert testimony "a jury is left to sheer speculation[.]" Given the circumstances in this case, expert testimony is required to show causation.[15] Thus, Judge Kavanaugh was legally correct in her conclusion that, without expert testimony,[16] appellant could not generate a jury question on the issue of whether the pain and suffering damages being sought were caused by the September 9, 1993 accident.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

**14.** Appellant's situation differs from a situation in which the absence of expert testimony did not preclude the question of causation from going to the jury. *See Vroom v. Arundel Gas Co.*, 262 Md. 657, 664, 278 A.2d 563 (1971)(causation was obvious and medical testimony was not needed where hot water burned plaintiff's mouth). *Compare Craig v. Chenoweth*, 232 Md. 397, 400–01, 194 A.2d 78 (1963)(expert testimony necessary regarding the permanent nature of partial paralysis to finger and thumb after car accident); *Kraft v. Freedman*, 15 Md.App. 187, 193–94, 289 A.2d 614 (1972)(expert testimony needed for ileitis symptoms because complicated medical question and no legally sufficient evidence to establish that flare up was caused by accident).

**15.** "In Maryland, the test of the sufficiency of the evidence to take the question of causal relationship to the jury is 'reasonable probability,' or 'reasonable certainty.' *Ager v. Baltimore Transit Co.*, 213 Md. 414, 421, 132 A.2d 469.... In *Charlton Bros. Co. v. Garrettson*, 188 Md. 85, 94, 51 A.2d 642, this Court said: 'The law requires proof of probable, not merely possible, facts, including causal relations. * * *. But sequence of events, plus proof of *possible* causal relation, may amount to proof of *probable* causal relation, in the absence of evidence of any other equally probable cause.' " *Wilhelm v. State Traffic Safety Comm.*, 230 Md. 91, 103–104 n. 1, 185 A.2d 715 (1962).

**16.** Judge Kavanaugh's ruling is also supported by *Butler v. James*, 135 Md.App. 196, 761 A.2d 1036 (2000), in which this Court held that, when a defendant who is sued in District Court prays a jury trial and the case is transferred to the circuit court, the plaintiff who seeks to present evidence under Md.Code (1998 Repl.Vol.), Cts. & Jud. Proc. § 10–104 is "estopped from pursuing damages in excess of [$25,000, the amount] allowed under [C.J.] § 4–401." *Id.* at 211, 761 A.2d 1036.