**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-1879**

ARTHUR GALLOWAY,

Plaintiff – Appellant,

v.

HORNE CONCRETE CONSTRUCTION,

Defendant – Appellee,

and

APOLLO INCORPORATED; SASA DJURIC,

Defendants.

**No. 11-1898**

ARTHUR GALLOWAY,

Plaintiff – Appellee,

v.

HORNE CONCRETE CONSTRUCTION,

Defendant – Appellant,

and

SASA DJURIC; APOLLO INCORPORATED,

Defendants.

Appeals from the United States District Court for the District of Maryland, at Greenbelt. Jillyn K. Schulze, Magistrate Judge. (8:09-cv-02274-JKS)

Argued: January 30, 2013                    Decided: May 1, 2013

Before MOTZ, KING, and FLOYD, Circuit Judges.

No. 11-1879 vacated and remanded; No. 11-1898 dismissed by unpublished per curiam opinion.

**ARGUED:** Gregory L. Lattimer, LAW OFFICES OF GREGORY L. LATTIMER, Washington, D.C., for Appellant/Cross-Appellee. James S. Liskow, DECARO, DORAN, SICILIANO, GALLAGHER & DEBLASIS, LLP, Bowie, Maryland, for Appellee/Cross-Appellant. **ON BRIEF:** Erik H. Nyce, DECARO, DORAN, SICILIANO, GALLAGHER & DEBLASIS, LLP, Bowie, Maryland, for Appellee/Cross-Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Arthur Galloway seeks a new trial in the District of Maryland — on damages only — concerning his negligence claim against Horne Concrete Construction, arising from a highway accident. Galloway contends that the district court erred at trial by excluding a substantial portion of his damages evidence, including his medical bills and the depositions of his treating physicians, along with additional proof that he suffered permanent injuries and lost future earnings. The evidence was excluded after the court concluded that, under Maryland law, its admission was dependent upon Galloway presenting expert testimony to prove causation — that is, to connect the accident to the severe back injuries for which he was thereafter treated.

Although the jury returned a verdict against Horne, Galloway maintains that the court's erroneous evidentiary rulings resulted in a reduced damages award. As explained below, we are satisfied that expert testimony was not required under Maryland law, that the court's error of law caused it to abuse its discretion by excluding Galloway's evidence, and that the erroneous rulings were prejudicial. Accordingly, we vacate the damages award against Horne and remand for a new trial exclusively on that issue.

At the time of the accident underlying this matter, Galloway was a resident of Alabama and the owner-operator of a Volvo tractor used for long-distance trucking.[1] Galloway worked primarily as a contract hauler for K.C. Transport, LLC, of Newton, Alabama. When K.C.'s trailer loads were ready to be picked up and hauled to their destinations, it would contact Galloway, who would handle the transit and delivery.

On September 28, 2006, Galloway was driving his tractor-trailer south on Interstate 95 in Harford County, Maryland, just northeast of Baltimore. At about 1:30 p.m., the traffic slowed and Galloway came to a stop in the center lane of the highway, behind a tractor-trailer operated by Apollo Incorporated. Sasa Djuric, also driving an eighteen-wheel tractor-trailer, then came to a stop behind Galloway. Djuric's rig, however, was struck in the rear by a dump truck driven by Horne's employee, who failed to stop in time. As a result, the Djuric tractor-trailer was pushed violently into Galloway's rig, which was in

---

[1] The facts presented to the jury are recited in the light most favorable to Galloway, as the prevailing party at trial. See E.E.O.C. v. Fed. Express Corp., 513 F.3d 360, 365 (4th Cir. 2008). Additional facts drawn from the excluded evidence, primarily the treating physicians' depositions and medical records, are not in dispute and are set forth accordingly.

turn pushed into Apollo's. Badly damaged and later declared a total loss by the insurer, Galloway's tractor-trailer was towed from the multiple-vehicle crash.[2]

Galloway did not receive medical treatment at the accident scene, and he remained overnight with his vehicle at a Maryland salvage yard, where he began to experience severe lower back pain. Galloway informed K.C.'s insurance adjuster early the next morning that he needed to go to the hospital. The adjuster, however, advised Galloway to instead return to Alabama before seeking medical treatment. As a result, Galloway travelled to Alabama on September 30, 2006, as a passenger on another K.C. rig.

Soon after returning home, Galloway sought medical treatment from his primary care physician, Dr. Smith. During Galloway's initial examination on October 2, 2006, he advised Dr. Smith of the accident and complained of severe back pain. Dr. Smith prescribed medication, recommended rest, and directed Galloway to return in a week if his pain did not subside.

On October 9, 2006, his lower back pain having worsened, Galloway again saw Dr. Smith. Dr. Smith's notes from that visit

---

[2] The five vehicles in the chain-reaction crash included, from front to rear, a pickup truck, Apollo's tractor-trailer, Galloway's tractor-trailer, Djuric's tractor-trailer, and Horne's dump truck.

5

reflect that Galloway was suffering from, "[b]ack Strain. Work Related. Happened two weeks ago." J.A. 171.[3] Dr. Smith prescribed more medication, but Galloway's back pain worsened further, and he returned for an additional consultation on October 16, 2006. On this occasion, Dr. Smith ordered an MRI of Galloway's lower back, which revealed a herniated disc. Due to his continuing back pain, Galloway was promptly referred to a neurosurgeon.

The neurosurgeon, Dr. Cezayirli, examined Galloway on October 25, 2006. Upon reviewing the MRI and conducting his own physical examination, Dr. Cezayirli confirmed that Galloway was suffering from a herniated disc. Dr. Cezayirli's records reflect that Galloway "was in a 18-wheeler that was struck by another 18-wheeler from the rear and has been bothered with pain since that time." J.A. 170. Dr. Cezayirli determined to treat Galloway's injury conservatively; thus, before considering surgery, he referred Galloway to Dr. Kelsey, a pain management specialist.

On October 30, 2006, Dr. Kelsey examined Galloway and observed that he had "[c]hronic lower back and right lower extremity pain secondary to a herniated disc from a recent motor

_____

[3] Citations herein to "J.A. _____" refer to the contents of the Joint Appendix filed by the parties in this appeal.

vehicle accident." J.A. 58. Dr. Kelsey's records further reflect that,

> [t]his is a 55 year old African American male who comes to the Outpatient Physical Medicine Clinic at UAB Medical West complaining of chronic lower back pain . . . . [Galloway] sustained this in a [motor vehicle accident] on 9/29/06 [sic] in which he was rear-ended by a series of tractor trailers in a multi-car collision on U.S. 95 outside of Baltimore, Maryland.

Id. Dr. Kelsey administered a regional anesthetic to Galloway's lower back and prescribed physical therapy sessions twice a week for a month. At the request of Galloway's physical therapist, Dr. Kelsey also prescribed a transcutaneous electrical nerve stimulation ("TENS") unit for in-home therapy. On November 29, 2006, Kelsey directed additional physical therapy sessions — twice a week for three weeks — plus continuing in-home therapy with the TENS unit. On January 22, 2007, Dr. Kelsey administered a second regional anesthetic, but Galloway's back injuries failed to respond to treatment, and his severe back pain persisted. As a result, Dr. Kelsey recommended that Galloway return to Dr. Cezayirli for back surgery.

On June 14, 2007, Dr. Cezayirli surgically removed Galloway's herniated disc. The surgeon then inserted a piece of bone into the disc space in Galloway's lower back, using a procedure known as a spinal fusion. After performing the spinal

7

fusion, Dr. Cezayirli again referred Galloway to Dr. Kelsey for post-operative physical therapy.

                                    B.

On August 27, 2009, Galloway filed his single-count Complaint in the District of Maryland against Horne, Djuric, and Apollo. Galloway alleged therein that the defendants' negligence had caused his back injuries, as well as other injuries, and he sought damages of not less than one million dollars. On March 26, 2010, by consent of the parties, the proceedings were referred to a magistrate judge. See 28 U.S.C. § 636. After the close of discovery, the defendants filed separate summary judgment motions. On January 25, 2011, the court awarded summary judgment to Apollo, but denied summary judgment to Horne and Djuric.

Because Galloway's treating physicians were in Alabama, he prepared for trial by conducting evidentiary depositions of Drs. Kelsey and Cezayirli on June 21, 2011. The two treating physicians were not designated as expert witnesses, but were identified as fact witnesses in Galloway's discovery responses.

Soon thereafter, Horne moved in limine to exclude from trial the testimony of Galloway's three treating physicians.[4]

---

[4] At trial, Galloway's lawyer apparently intended to introduce the evidentiary depositions of Drs. Kelsey and Cezayirli, and to present Dr. Smith as a live witness.

8

Horne argued, inter alia, that their evidence was inadmissible because the physicians had never causally linked Galloway's injuries, or his need for the spinal fusion, to the September 2006 accident. Asserting a lack of proof on causation, Horne likewise sought to exclude any evidence of lost wages and the permanent nature of Galloway's back injuries. Galloway opposed Horne's motion in limine, and the magistrate judge, on July 8, 2011, conducted a telephonic hearing thereon.

Relying on the decision of the Court of Special Appeals of Maryland in Desua v. Yokim, the magistrate judge determined that Galloway's back injuries and treatments presented a complicated medical question for which expert testimony was necessary to prove causation, but that no such testimony had been proffered. See 768 A.2d 56, 60 (Md. Ct. Spec. App. 2001) (citing Wilhelm v. State Traffic Safety Comm'n, 185 A.2d 715, 719 (Md. 1962) (requiring expert testimony to prove causation where "complicated medical question" lies outside knowledge of laymen)). With regard to the deposition testimony of Drs. Cezayirli and Kelsey, the magistrate judge explained that "[t]he issue here is whether either of them causally relates their treatment [of Galloway] to the accident and that is the very serious issue in this case." J.A. 346.

The magistrate judge then ruled that Dr. Cezayirli's evidence would be excluded in its entirety, in that he "never

9

connect[ed] the needs for surgery or indeed any of the treatment that he provid[ed] to this accident." J.A. 347. Addressing the testimony of the pain management specialist, the court explained that "Dr. Kelsey's treatment after the surgery is . . . not relevant here," but that Dr. Smith might link Dr. Kelsey's pre-surgery treatments to the accident. Id. at 351. Accordingly, the court deferred ruling on the in limine motion as to Dr. Kelsey's pre-surgery treatments, but granted the motion entirely as to Dr. Cezayirli. The court denied Horne's motion in limine as to Dr. Smith, advising that it would not be clear until trial whether he could testify regarding causation.

Having barred from trial the admission of all evidence relating to the spinal fusion surgery, the magistrate judge concluded that Galloway was not entitled to claim damages for permanent injuries, and thus agreed with Horne that he could neither seek nor recover future lost wages. Finally, the magistrate judge ruled that Galloway could not testify regarding any of his medical treatments, including the spinal fusion, but could advise the jury that he suffered back pain from the accident and that he had sought medical care for the pain.

C.

The jury trial was conducted in Greenbelt on July 12-13, 2011, where the magistrate judge's pretrial evidentiary rulings prompted further discussion. For example, although Galloway was

10

barred from introducing the evidentiary depositions of Drs. Kelsey and Cezayirli, he was allowed to testify that he had never experienced back problems prior to the accident, and that he suffered severe lower back pain immediately afterward. Further, though Galloway was permitted to testify that he secured medical treatments to alleviate his pain, the magistrate judge had left open the question of whether and to what extent he could describe those treatments.

Horne again objected to such evidence, however, and to any mention of Galloway's treating physicians. The court agreed with Horne, as the record illustrates:

> The Court: [Galloway] has personal knowledge about how he felt. He has personal knowledge about how he feels today. He cannot testify about his surgery because [the surgery] has not been causally linked to this accident. The same is true with Dr. Kelsey's treatment.
>
> * * *
>
> Mr. Lattimer: How is it that somebody can't talk about what happened to them? [Galloway] can't say that he went to a doctor?
>
> The Court: [Galloway] can talk about his pain. That's the only thing [he] can casually [sic] relate to this accident. The reason [Galloway] can do that is because [he] can say he wasn't in pain before the accident. [Galloway] can say that because he knows it from personal experience.

J.A. 449. Galloway was thus prohibited by the magistrate judge from testifying about his back treatments, including the spinal fusion. Galloway's evidence relating to his other medical

treatments was also excluded, as were his treating physicians' evidentiary depositions.[5]

The only two witnesses who testified on Galloway's behalf were Galloway himself and his wife Glenda. Mrs. Galloway, who worked as the family's business manager, was prevented from testifying that her husband is permanently injured, that his income has been diminished, or that the back injury and spinal fusion will negatively affect his future earnings. At the conclusion of Galloway's case-in-chief, the magistrate judge revisited her ruling on the lost wages issue, modifying it slightly to allow Galloway to seek lost wages through the date of trial. Djuric and Horne then presented their respective defenses, which consisted in Djuric's case solely of his own testimony, and was limited in Horne's case to just three witnesses. Afterward, the parties rested with no rebuttal.

Before instructing the jury, the magistrate judge further explained her rejection of Galloway's claim for future lost wages, stating that "I'm not giving that instruction . . . because I do believe that medical evidence of future inability

---

[5] The magistrate judge thus sharply circumscribed the testimony of Galloway and his wife, and excluded entirely the evidentiary depositions of Drs. Kelsey and Cezayirli, plus the exhibits to those depositions. The exhibits consisted of, inter alia, evaluation forms, correspondence between treating physicians, general notes, prescriptions, progress notes, physical therapy evaluations, and extensive medical bills.

to work would be required to support an instruction in that area." J.A. 627. Accordingly, the verdict form authorized only three types of damages: (a) past lost wages (through the date of trial); (b) past non-economic damages, including pain and suffering (through the date of trial); and (c) future non-economic damages.

The jury found Horne liable to Galloway on his negligence claim — thereby finding that Horne had caused Galloway's injuries — but found in favor of Djuric. Despite the evidentiary limitations imposed at trial, the jury assessed $125,000 in damages against Horne.[6] On July 15, 2011, judgment was entered accordingly and, on August 13, 2011, Galloway noticed this appeal. On August 18, 2011, Horne filed a cross-appeal, which it now seeks to withdraw.[7] We possess jurisdiction pursuant to 28 U.S.C. § 1291.

---

[6] The breakdown of the jury's damages award, as reflected on the verdict form, was as follows: $80,000 for past lost wages; $40,000 for past non-economic damages, including pain and suffering, through the date of trial; and $5,000 for future non-economic damages.

[7] In its response brief, Horne requested that we authorize the withdrawal of its cross-appeal. We are satisfied to grant that request and hereby dismiss Horne's cross-appeal, which is docketed and consolidated as Appeal No. 11-1898.

13

II.

Generally, we review for abuse of discretion a trial court's rulings on the admissibility of evidence. See Bryte ex rel. Bryte v. American Household, Inc., 429 F.3d 469, 475 (4th Cir. 2005). Notably, an error of law made by a trial court constitutes an abuse of its discretion. See Dixon v. Edwards, 290 F.3d 699, 718 (4th Cir. 2002). More precisely, the question of whether a personal injury dispute presents a "complicated medical question" necessitating expert testimony, see Wilhelm v. State Traffic Safety Comm'n, 185 A.2d 715, 719 (Md. 1962), involves an interpretation of state law, which we review de novo. See Bryte, 429 F.3d at 475.

III.

A.

Galloway challenges only the amount of the judgment and seeks a new trial in that regard, arguing that the magistrate judge's evidentiary rulings precluded the jury from properly evaluating his damages. We are obliged to apply the substantive law of Maryland, and we must decide the matter as that state's highest court — the Court of Appeals of Maryland — would decide it. See Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505 (4th Cir. 1999). The magistrate judge's disputed rulings were premised on her view that, under Maryland law, Galloway's

14

claim presented a complicated medical question that required expert testimony to establish his entitlement to certain categories of damages.

In the seminal case of Wilhelm v. State Traffic Safety Commission, 185 A.2d 715, 719 (Md. 1962), the Court of Appeals of Maryland made clear that when a personal injury claim involves a "complicated medical question" that "falls within the province of medical experts," expert testimony must be presented to the fact-finder to connect the injuries to the alleged negligent act.[8] The court nevertheless recognized that "[t]here are . . . many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony." Id. Expert testimony is not required, as Wilhelm further explained, if the case falls into one of three categories: (1) if "a disability develops coincidentally with," or within a "reasonable time after," the subject act; or (2) if the proof of causation is "clearly apparent" from the nature and circumstances of the injury; or (3) if "the cause of the injury relates to matters of common experience, knowledge, or observation of laymen." Id.

_____

[8] In Shpigel v. White, 741 A.2d 1205, 1212 (Md. 1999), Maryland's high court described Wilhelm as "[t]he seminal case" in Maryland on the need for expert testimony in tort cases.

15

Put succinctly, this dispute qualifies under each of Wilhelm's three categories of cases where experts are unnecessary. First, Galloway's back injuries developed coincidentally with and immediately after Horne's negligence. Second, causation was "clearly apparent" from the nature and circumstances of his injuries. Finally, under the evidence, the cause of Galloway's back injuries was shown to be the wreck on I-95, and a reasonable jury could so find by using its "common experience, knowledge, [and] observation." Wilhelm, 185 A.2d at 719. In short, no experts are needed to establish that being rear-ended by an eighteen-wheel tractor-trailer in a multi-vehicle interstate accident can cause lower-back injuries.

In Wilhelm, where the plaintiff was injured in a rear-end collision, the court of appeals deemed expert testimony necessary to prove the causal nexus between the collision and emotional disturbances of the plaintiff. Importantly, however, the court recognized that an expert was not necessary to make a separate causal connection — between a bruise on the plaintiff's forehead and the subsequent depigmentation of her skin in the same area. In discussing the forehead injury, the court explained that "common experience, knowledge and observation of laymen" authorized the jury to infer that the collision caused the injury. Id. at 719.

16

Wilhelm has since been applied by the Maryland courts to require, inter alia, expert testimony to establish the causal connection between vaccinations given during infancy and a diagnosis of autism made several years thereafter. See Aventis Pasteur, Inc. v. Skevofilax, 914 A.2d 113 (Md. 2007). Skevofilax, perhaps, is the paradigmatic example of a case presenting a complicated medical question. On the other hand, a plaintiff was not required to prove causation by expert evidence when she drank from a spigot and developed chemical burns in her mouth immediately thereafter. See Vroom v. Arundel Gas Co., 278 A.2d 563 (Md. 1971). Similarly, when seeking release from commitment, a person suffering a mental disorder was not required to present expert testimony to prove that he would not be a danger to himself or others. See Bean v. Dep't of Health and Mental Hygiene, 959 A.2d 778 (Md. 2008).

In the context of an automobile accident, the Maryland high court has required expert testimony concerning whether the accident caused, six weeks later, the partial paralysis of a hand. See Craig v. Chenoweth, 194 A.2d 78 (Md. 1963). Conversely, in Schweitzer v. Showell, Maryland's intermediate appellate court found a sufficient causal connection, without any expert testimony on causation, between a vehicle accident and the buckling of the plaintiff's knee fourteen months thereafter. See 313 A.2d 97 (Md. Ct. Spec. App. 1974).

17

In Desua v. Yokim, 768 A.2d 56 (Md. Ct. Spec. App. 2001), the decision on which the magistrate judge relied, the intermediate appellate court concluded that expert testimony was essential to establishing that a soft-tissue neck injury had been caused by a vehicle accident. The court emphasized the disparity between damages to the vehicle — concededly "a relatively simple, rear-end accident" — and the claimed personal injury, as well as the eighteen-day delay between the plaintiff's emergency room visit and her first appointment with a treating physician. Id. at 61.

By contrast, Galloway's crash on I-95, involving three tractor-trailers and a large dump truck, was a force-laden event that was reasonably likely to injure those involved. For example, it was shown that Galloway's vehicle was a total loss, and that he promptly sought medical treatment for his back injuries. And, unlike the soft tissue injury in Desua, Galloway's herniated disc was objectively observable, was diagnosed by way of an MRI, and resulted in a spinal fusion.

Put simply, this case involves an over-the-road tractor-trailer driver — plaintiff Galloway — who had never suffered from or complained of back pain, but who was injured in a violent multi-vehicle accident. Galloway developed lower back pain immediately thereafter, and he promptly reported his injuries to his treating physicians, who engaged in a course of

18

treatments and then diagnosed his herniated disc. Ultimately, Galloway's back injuries could only be resolved through major surgery, a spinal fusion. In these circumstances, the evidence was plentiful for a reasonable jury to conclude — as it did — that the Maryland accident caused Galloway's injuries. Because the court erred as a matter of law in ruling that expert testimony was necessary, it abused its discretion by excluding Galloway's proffered damages evidence.

## B.

Horne's primary contention at oral argument — without conceding its other positions — was that any evidentiary errors made by the magistrate judge were harmless. The excluded medical bills alone, however, for which Galloway is surely entitled to recover, belie Horne's assertion. Those bills, which, according to Galloway's counsel, amount to approximately $120,000, would help lay the foundation for a calculation of future damages far beyond the $5,000 actually awarded by the jury here. See supra note 6.

In any event, we need not identify with certainty how the jury's assessment of damages was influenced by the magistrate judge's exclusion of Galloway's evidence. More to the point, "when a jury's damages award itself indicates so strongly that the error substantially influenced the jury's verdict, the error cannot be dismissed as harmless under Rule 61 of the Federal

19

Rules of Civil Procedure." Sasaki v. Class, 92 F.3d 232, 237 (4th Cir. 1996). Here, a comparison of the relatively small $125,000 verdict and the relatively large sum of $120,000 in excluded medical bills is more than sufficient to conclude that the erroneous evidentiary rulings substantially influenced the jury's verdict, and therefore were not harmless. The point becomes even more apparent in consideration of the undeniable probability that the excluded medical bills and other evidence resulted in a reduction of Galloway's award for future pain and suffering.[9]

IV.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for a new trial on damages only. We also dismiss the cross-appeal noticed by Horne.

No. 11-1879 VACATED AND REMANDED
No. 11-1898 DISMISSED

---

[9] Because the erroneous evidentiary rulings were not harmless, we must assess whether our remand for a new trial should be limited to damages only. Although neither party has addressed that issue on appeal, it is established that "errors relating to damage awards do not require reversal of liability determinations if the two issues are not inextricably interwoven." Sasaki, 92 F.3d at 238. Notably, Horne acknowledges that "liability for the accident is not contested on appeal," Br. of Appellee 4, and the verdict form required the jury to separately assess the questions on liability and damages. We are satisfied that the erroneous evidentiary rulings are not inextricably interwoven into the verdict on Horne's liability, and we thus remand for a damages trial only.

20