66 A.3d 1073

**BRETHREN MUTUAL INSURANCE CO.**

v.

**Kenneth SUCHOZA.**

**No. 1787, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

May 29, 2013.

**44**

Edward Sharkey, (Jeanine Gagliardi, on the brief), Bethesda, MD, for Appellant.

L. Teri Spradlin–Dahn, Annapolis, MD, for Appellee.

Panel: MEREDITH, WOODWARD and MATRICCIANI, JJ.

WOODWARD, J.

The instant appeal arises from a lawsuit filed on March 12, 2010, in the Circuit Court for Prince George's County by appellee, Kenneth Suchoza, against appellant, Brethren Mutual Insurance Company ("Brethren"), alleging that Brethren failed to pay benefits under an uninsured motorist ("UM") policy between Brethren and appellee's employer, Matrix Mechanical, Inc. ("Matrix"). Appellee's UM claim resulted from injuries sustained during a May 29, 2007 motor vehicle accident caused by an uninsured motorist while appellee was driving within the scope of his employment with Matrix.

On August 15 and 16, 2011, a trial was held in circuit court, at the conclusion of which a jury returned a verdict in favor of appellee for $535,876.00. Following the entry of judgment, Brethren filed a Motion for New Trial and to Alter or Amend Judgment, seeking, among other things, to have the judgment reduced by the amount of workers' compensation benefits previously received by appellee. On January 19, 2012, the circuit court denied Brethren's motion for a new trial but amended the judgment by reducing the amount thereof from $535,876.00 to $356,669.03 to reflect the amount of workers'

compensation benefits received by appellee as of the time of trial.

On appeal, Brethren presents three questions for our review, which we have slightly rephrased:

I. Did the trial court err or abuse its discretion by refusing to admit testimony of the payment of appellee's medical expenses by his workers' compensation carrier and the acceptance thereof as full payment by his health care providers?

II. Did the trial court err by failing to reduce the judgment in favor of appellee by the amount of workers' compensation benefits received by appellee from the trial date to the date of the court's ruling on Brethren's post-trial motion?

III. Did the trial court err by entering judgment in favor of appellee where appellee was entitled to recover future workers' compensation benefits?

For the reasons set forth below, we will answer all three questions in the negative and thus affirm the judgment of the circuit court.

## BACKGROUND

On May 29, 2007, appellee was driving an E–250 commercial cargo van within the scope of his employment as a Service Technician with Matrix. While stopped at a stoplight in Prince George's County, Maryland, the van driven by appellee was struck in the rear by a 1988 Dodge Dakota pickup truck, which was sitting at the stoplight directly behind appellee. The pickup truck was propelled into the back of appellee's van when the driver of a third vehicle, a Dodge Caravan, failed to control his vehicle and struck the rear end of the pickup truck. At the time of the accident, the driver of the Dodge Caravan was an uninsured motorist.

As a result of the accident, appellee sustained injuries to his neck and left shoulder, causing him to undergo a cervical discectomy and fusion surgery. Following surgery, it was

determined that appellee sustained a "40% whole person impairment," had reached his "maximum surgical improvement," and could return to work in a different capacity. Appellee then sought relief by: (1) filing a workers' compensation claim, and (2) filing a complaint in circuit court to collect benefits under Matrix's UM policy with Brethren.

### Appellee's Workers' Compensation Claim

At the same time appellee was proceeding with his complaint in the circuit court, he was pursuing a claim before the Workers' Compensation Commission, seeking benefits for injuries and losses he sustained as a result of the accident. As of the date of trial, appellee had received workers' compensation benefits of $179,206.97, including: $69,496.97 in medical expenses and $109,710.00 in lost wages. In addition, appellee's workers' compensation claim was not fully resolved, and he was entitled to future workers' compensation benefits. Between the close of trial and the date on which the trial court resolved Brethren's post-trial motion, appellee was awarded an additional $56,639.00 in workers' compensation benefits, $9,339.00 of which was received by appellee.

### Appellee's Uninsured Motorist Claim

Matrix maintained a UM policy with Brethren that, according to appellee, "was specifically contracted for by [Matrix] to provide for all medical treatment, lost wages, and any other relevant damages and injuries rendered to their employees as a result of an uninsured driver." The insurance policy contained a provision limiting Brethren's liability in the event that an employee recovered workers' compensation benefits stemming from the same accident for which UM benefits were sought. The relevant provision states:

> We will not pay for any element of "loss" [i]f a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability or similar law. However, this applies only to that amount for which the provider of the workers' compensations [sic] benefits has not been reimbursed.

Appellee filed a claim with Brethren under its UM policy, which Brethren denied. On March 12, 2010, appellee filed a complaint in circuit court, asserting that Brethren's denial of UM benefits pursuant to Brethren's UM insurance policy with Matrix constituted a breach of contract.

In light of the UM provision limiting Brethren's liability based upon workers' compensation recovery by appellee, the parties filed a Consent Motion to Stay Proceedings on January 11, 2011, requesting that the circuit court case be stayed pending the resolution of appellee's workers' compensation claim. On January 25, 2011, the trial court entered an order denying the request.

On August 15 and 16, 2011, a jury trial was held in the circuit court. At trial, appellee introduced into evidence the medical bills, totaling $129,876.00, that he incurred as a result of the accident, along with the testimony of his treating physician that such bills were fair, reasonable, and necessary. Brethren sought to introduce evidence of the reasonable value of the medical services rendered to appellee by proffering evidence of the actual payments made by appellee's workers' compensation carrier [1] and accepted as full payment by the health care providers. The trial court did not allow the admission of the evidence of such payments, stating that it was a "collateral source." The jury returned a verdict in favor of appellee for a total of $535,876.00, comprised of: $156,000.00 in lost wages, $129,876.00 in medical expenses, and $250,000.00 in non-economic damages. On September 6, 2011, the circuit court entered judgment in favor of appellee in the amount of $535,876.00.

Following the trial court's entry of judgment, Brethren filed a Motion for New Trial and to Alter or Amend Judgment on September 19, 2011. Brethren's motion was "based upon (1) the exclusion of evidence of the actual amounts accepted by [appellee]'s doctors in full payment for treatment, (2) the trial court's failure to reduce the Judgment by the amount of

---

1. Brethren was also appellee's workers' compensation carrier.

workers' compensation benefits paid, and (3) the entry of Judgment for [appellee] absent a *prima facie* showing that [Brethren] breached the applicable contract of insurance." On January 13, 2012, the circuit court heard argument on Brethren's motion. On January 19, 2012, the circuit court denied Brethren's motion for a new trial but reduced the amount of the judgment from $535,876.00 to $356,669.03 to reflect the amount of workers' compensation benefits received by appellee as of the date of trial. Brethren noted a timely appeal to this Court.

## DISCUSSION

*Reasonable Value of Medical Services Rendered*

At trial on August 15 and 16, 2011, the trial court ruled on the admissibility of evidence regarding the fair and reasonable value of medical services rendered by health care providers in treating appellee for injuries sustained as a result of the accident. Appellee offered medical bills totaling $129,876.00 as evidence of the expenses incurred by him for medical treatment rendered for such injuries. Appellee played portions of the videotaped deposition of Dr. Christopher Urban for the jury, in which Dr. Urban testified that he had reviewed such medical bills and that the amounts of those bills were fair and reasonable. The court admitted appellee's medical bills into evidence.[2]

Brethren sought to introduce evidence of the payments actually made by appellee's workers' compensation carrier to—and accepted as full payment by—appellee's health care providers. Brethren's counsel made the following proffer to the court:

[A]t this point the defense would offer testimony of Lori Shook. She is the workers['] compensation adjuster for

---

2. Brethren objected to the admission of appellee's medical bills, but on the sole ground that Dr. Urban could testify only to the reasonableness of his own bills. Brethren does not seek this Court's review of the trial court's overruling of that objection.

[appellee]'s claim. We would elicit testimony from Ms. Shook concerning [appellee]'s workers['] compensation claim, his entitlement to recover under workers['] compensation, **the amounts paid by workers['] compensation, the amounts accepted by providers from workers['] compensation,** [ ] testimony concerning the pending status of the matter [ ] that [appellee] is still entitled to recover additional funds pursuant to workers['] compensation and that there has been no reimbursement.

(Emphasis added). Brethren did not proffer any expert testimony or other competent evidence regarding the reasonableness of the amounts actually paid for appellee's medical treatment. The court ruled that Brethren's proffered evidence was not admissible, finding that it was a "collateral source," and thus would violate the collateral source rule.

In the instant appeal, Brethren contends that "the trial court abused its discretion by excluding evidence concerning amounts accepted as full payment by [appellee's] health care providers." According to Brethren, "[t]he dollar amount written on the invoice [submitted by appellee] bears little relation to the value of the service or the amount these providers actually accept[ed]." Brethren further asserts that the collateral source rule is not applicable in contract cases, such as the instant matter. Even if the collateral source rule is applicable, according to Brethren, the admission of lesser amounts accepted as full payment of medical bills is not violative of such rule. Brethren concludes that the trial court's exclusion of evidence concerning payment actually accepted for appellee's medical treatment prejudiced Brethren by "affecting the jury's decision concerning the reasonable value of the medical care," and thus constitutes reversible error.

Appellee contends that the "trial court did not abuse its discretion in excluding the medical bills reflecting reduced amounts accepted as payment for medical services." According to appellee, the collateral source rule does apply, because although the original action was for breach of contract, appellee's claim was "the result of a tortious automobile accident," and, therefore, Brethren "st[ands] in the shoes of the tortfea-

sor." Appellee argues that the court did not preclude Brethren from offering contradictory evidence concerning the reasonableness of the medical bills offered by appellee; however, Brethren "never made an attempt to get that type of evidence before the jury." Further, appellee contends that Brethren "cannot show that any prejudice was probable, because [Brethren] did nothing to refute the testimony that the medical bills were fair and reasonable for the necessary treatment provided to appellee."

Recently, in *Washington Metropolitan Area Transit Authority v. Washington,* 210 Md.App. 439, 63 A.3d 609 (2013), this Court set forth the standard of review governing an appellate court's review of a trial court's determination of evidentiary issues involving relevancy. We stated:

Md. Rule 5–402, governing the admissibility of relevant or irrelevant evidence, provides: "Except as otherwise provided by constitutions, statutes, or these rules, or by decisional law not inconsistent with these rules, all relevant evidence is admissible. Evidence that is not relevant is not admissible." Thus, although a trial court has "wide discretion" in weighing the relevance of evidence, it does not have discretion to admit irrelevant evidence. *Id.; State v. Simms,* 420 Md. 705, 724 [25 A.3d 144] (2011).

In evaluating the correctness of the trial court's ruling, we engage in a two-pronged analysis. First, we consider whether the evidence is legally relevant, a conclusion of law which we review *de novo. Simms,* 420 Md. at 725 [25 A.3d 144]. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5–401. If we conclude that the challenged evidence meets this definition, we then determine whether the court nonetheless abused its discretion by admitting relevant evidence which should have been excluded because its "probative value is outweighed by the danger of unfair prejudice, or other

countervailing concerns as outlined in Maryland Rule 5–403." *Simms,* 420 Md. at 725 [25 A.3d 144].

*Id.* at 450–51.

Brethren argues that the trial court abused its discretion in excluding its proffered evidence, because "Maryland's courts, like courts in most jurisdictions, do not apply the collateral source rule in contract cases." In our view, we do not need to reach the question of whether the collateral source rule applies to a UM action, or if applied, whether such rule would preclude the proffered evidence of Brethren. We believe that the determinative issue is whether Brethren's proffered evidence is admissible as evidence of the fair and reasonable value of medical expenses incurred by appellee as a result of the accident. For the reasons set forth below, we conclude that under Maryland law, it is not.

In *Kujawa v. Baltimore Transit Co.,* 224 Md. 195, 167 A.2d 96 (1961), a mother, father, and son brought claims for damages arising out of a collision between a transit bus and a car in which the mother and son were passengers. *Id.* at 200, 167 A.2d 96. At trial, the mother testified that she and her son had seen a number of doctors for treatment of their injuries. *Id.* at 208, 167 A.2d 96. The doctors' unauthenticated bills were then proffered as evidence. *Id.* The trial court excluded these medical bills, because the mother did not have evidence showing that the charges she sought to introduce into evidence were reasonable.[3] *Id.*

In affirming the trial court's ruling, the Court of Appeals stated that "[t]he medical bills, absent a showing of reasonableness, were properly excluded." *Id.* The Court explained that "[e]vidence of the amount or payment of medical bills does not establish the reasonable value of the services for which the bills were rendered or justify recovery therefor." *Id.*

---

**3.** The *Kujawa* Court did admit the bills of two doctors who testified that their charges were reasonable. 224 Md. at 208, 167 A.2d 96.

In *Shpigel v. White,* 357 Md. 117, 741 A.2d 1205 (1999), the appellants sustained injuries and medical bills resulting from their car being hit in the rear by a vehicle driven by the appellee. *Id.* at 120–21, 741 A.2d 1205. Following the accident, the appellants incurred expenses from their initial hospital visit, follow up visits to physicians, and psychotherapy sessions. *Id.* at 121–22, 741 A.2d 1205. At trial, the appellants attempted to introduce the medical bills into evidence without expert testimony, submitting the bills instead with accompanying affidavits of the custodians of those records, which affidavits stated, *inter alia,* that the expenses were fair and reasonable. *Id.* at 123–24, 741 A.2d 1205. The trial court excluded the medical bills, reasoning that, because the defense challenged the reasonableness of the bills, wanted an opportunity to cross-examine, and wanted to see if some expert could say that the bills were reasonable, the admission of the medical bills required expert testimony. *Id.* at 124–25, 741 A.2d 1205.

On appeal, the Court of Appeals recognized that "[the appellants'] purpose in offering the medical bills in evidence was to prove special damages. In order for the amount paid or incurred for medical care to be admissible as evidence of special damages, there ordinarily must be evidence that the amounts are fair and reasonable." *Id.* at 128, 741 A.2d 1205. The Court cited *Kujawa* for the proposition that " '[e]vidence of the amount or payment of medical bills does not establish the reasonable value of the services for which the bills were rendered....' " *Id.* (quoting *Kujawa,* 224 Md. at 208, 167 A.2d 96). In *Shpigel,* the Court was confronted with affidavits of the custodians of the records that the medical charges were reasonable. *Id.* at 123–24, 741 A.2d 1205. In affirming the trial court's exclusion of the medical bills, the *Shpigel* Court concluded:

> Inclusion in the affidavits of certain of the custodians of the records proffered in the instant matter of statements that the charges were reasonable did not make the medical bills admissible. On that aspect of admissibility required by our cases, the fact to be proved is the reasonableness of the

bill, but the witness to that fact is not present and subject to cross-examination. Accordingly, the circuit court did not err in excluding from its consideration on summary judgment the medical bills proffered by [appellants].

*Id.* at 129, 741 A.2d 1205.

In *Desua v. Yokim,* 137 Md.App. 138, 768 A.2d 56 (2001), the appellant incurred medical expenses after being involved in an automobile accident that caused her to experience pain in her neck. *Id.* at 141, 768 A.2d 56. At trial, the appellant sought to introduce medical bills through billing managers employed by her health care providers. *Id.* at 142, 768 A.2d 56. The trial court prohibited the appellant from introducing the medical bills, reasoning that the "appellant needed expert testimony to introduce her medical bills into evidence." *Id.* at 143, 768 A.2d 56. On appeal, this Court reaffirmed the principles of *Kujawa* and *Shpigel* that " '[e]vidence of the amount or payment of medical bills does not establish the reasonable value of the services for which the bills were rendered[,]' " *id.* at 143–44, 768 A.2d 56 (quoting *Kujawa,* 224 Md. at 208, 167 A.2d 96), and that, " '[i]n order for the amount paid or incurred for medical care to be admissible as evidence of special damages, there ordinarily must be evidence that the amounts are fair and reasonable.' " *Id.* at 143, 768 A.2d 56 (quoting *Shpigel,* 357 Md. at 128, 741 A.2d 1205). We then acknowledged that under *Simco Sales v. Schweigman,* 237 Md. 180, 205 A.2d 245 (1964), a billing manager is competent to establish that a particular bill is fair and reasonable. 137 Md.App. at 144, 768 A.2d 56. However, because the issue of *necessity* was raised, we concluded that a billing manager was not "competent to explain why the patient's physician chose a particular type of treatment," and thus, the medical bills could not be introduced into evidence through a billing manager. *Id.*

Our inquiry on appeal in the case *sub judice* is to determine whether the trial court erred in excluding Brethren's evidence of payment of appellee's medical bills that was accepted as full payment by his medical providers. Brethren's

purpose in offering proof of payment of the medical bills is straightforward—it was an attempt to show the jury that the fair and reasonable value of the medical services rendered to appellee was the amounts paid and accepted by the health care providers, and not the amounts charged as stated on the medical bills. It is clear that under *Kujawa, Shpigel,* and *Desua,* evidence of the payment of appellee's medical bills does not establish the reasonable value of the services for which the bills were rendered, and thus is irrelevant to the issue of reasonableness. *See* Md. Rule 5–401. For the evidence of payment of appellee's medical bills to be admissible, Brethren had to adduce expert testimony or other competent evidence that the amount of such payment was the fair and reasonable value of the medical services rendered to appellee. Brethren did not proffer to the trial court any expert testimony or other competent evidence of reasonableness.[4]

In addition, the mere acceptance by a medical provider of the payment of a lesser amount on a bill is not probative of the reasonable value of the medical services reflected in that bill. There are many reasons (*e.g.,* managed care contracts, Medicaid contracts, private insurance agreements, etc.) why medical providers would accept a lesser amount than the amount charged. Indeed, in his deposition testimony,[5] Dr. Urban stated: "I think that the charges are what I should get paid for [the medical service provided]. We have horrible con-

---

**4.** We recognize that *Kujawa, Shpigel,* and *Desua* involved a plaintiff seeking to introduce medical bills as special damages for injuries caused by the defendant tortfeasor. Brethren has not cited to us any authority in Maryland, however—nor have we found any—why the requirement imposed on a plaintiff to adduce expert testimony or other competent evidence of the reasonable value of medical services reflected in the plaintiff's bills should not apply to a defendant who attempts to show the reasonable value of such services by introducing evidence of payment of an amount less than the amount charged.

**5.** In light of the trial court's ruling that excluded Brethren's proffered evidence of payments made on appellee's medical bills, the portion of Dr. Urban's deposition where Brethren's counsel cross-examined Dr. Urban about those payments was not shown to the jury. Brethren did not request that such cross-examination be played for the jury in the absence of the admission of Brethren's proffered evidence.

tracts with our companies and I think that we are actually right now redoing our contracts because we don't get paid enough for what we do." Dr. Urban elaborated on the notion of reasonableness pertaining to a bill for anesthesia services provided to appellee in the amount of $2,070.00, upon which the workers' compensation carrier paid only $444.00:

The amount of the adjustment is I would say criminal in that they are paying someone $400 to put someone to sleep and wake them up for a complex spine surgery, so I would say that the amount that's, again, accepted is well under what I would consider reasonable.

Thus, the admission of evidence of a medical provider's acceptance of a lesser amount as full payment for medical services rendered does little to assist the trier of fact in determining the reasonable value of such services. *See* Md. Rule 5–401.

Therefore, we hold that the trial court did not err in excluding Brethren's proffered evidence of payments made on appellee's medical bills that were accepted as full payment by his health care providers. Without expert testimony or other competent evidence to establish the fairness and reasonableness of such payments, Brethren's evidence was inadmissible.

Nevertheless, Brethren looks to cases from Ohio, Indiana, and Kansas, to support its contention that "both the amount originally billed by a medical care provider and the lesser amount paid by an insurer are admissible to prove the reasonable value of medical treatment." A careful reading of each case relied on by Brethren reveals critical legal dissimilarities, distinguishing them from the matter *sub judice.*

In *Robinson v. Bates,* 112 Ohio St.3d 17, 857 N.E.2d 1195 (2006) and *Stanley v. Walker,* 906 N.E.2d 852 (Ind.2009), the Supreme Court of Ohio and the Supreme Court of Indiana, respectively, held that "both the original bill and the amount accepted are evidence relevant to the reasonable value of medical expenses." *Robinson,* 857 N.E.2d at 1201; *Stanley,* 906 N.E.2d at 857 (quoting *Robinson,* 857 N.E.2d at 1201). The distinction that makes these cases inapplicable to the case *sub judice* is that both states have either a statute or an

evidentiary rule providing for the admission of medical bills as evidence of the reasonable value of medical services. In *Robinson*, an Ohio statute made medical bills "prima facie evidence of the reasonable value of charges for medical services." *Robinson*, 857 N.E.2d at 1198 (citing Ohio Rev.Code § 2317.421). Similarly, in *Stanley*, Indiana courts were governed by a rule of evidence that reads: " 'Statements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury are admissible into evidence. Such statements shall constitute prima facie evidence that the charges are reasonable.' " *Stanley*, 906 N.E.2d at 866 (quoting Ind. Evid. R. 413). In contrast to Ohio and Indiana, Maryland has no statute, evidentiary rule, or other source of law that allows medical bills to be introduced as prima facie evidence of the reasonable value of medical services rendered, except for such bills arising in claims specified in Md.Code (1974, 2006 Repl.Vol.), § 10–104 of the Courts and Judicial Proceedings Article where the amount in controversy does not exceed $30,000.[6]

In *Martinez v. Milburn Enterprises., Inc.*, 290 Kan. 572, 233 P.3d 205 (2010), the third case cited by Brethren, the appellant slipped and fell while shopping at the appellee's business, necessitating surgery on her back and causing her to incur hospital charges in the amount of $70,496.15. *Id.* at 208. The hospital wrote off $65,186.15 and accepted $5,310.00 in full

---

6. Md.Code (1974, 2006 Repl.Vol.), § 10–104(b)(3) of the Courts and Judicial Proceedings Article ("CJ") states:

> Subject to the provisions of paragraphs (1) and (2) of this subsection, the provisions of this section apply to a proceeding in:
> (i) The District Court; or
> (ii) A circuit court if the amount in controversy in the action in the circuit court does not exceed the amount specified in § 4–401 of this article for that type of action.

CJ § 10–104(e)(1) provides:

> A written statement or bill for health care expenses is admissible without the support of the testimony of a health care provider as the maker or the custodian of the statement or bill as evidence of the amount, fairness, and reasonableness of the charges for the services or materials provided.

satisfaction of the cost for medical services rendered to the appellant. *Id.* At trial, the court precluded the appellant from submitting evidence of medical bills in excess of the amount accepted by the hospital. *Id.*

On appeal, the Kansas Supreme Court framed the issue as being

> whether in a case involving private health insurance write-offs, the collateral source rule applies to bar evidence of (1) the amount originally billed for medical treatment or (2) the reduced amount accepted by the medical provider in full satisfaction of the amount billed, regardless of the source of payment.

*Id.* The *Martinez* Court held that the collateral source rule did not bar either type of evidence. *Id.*

In its analysis, the Court observed that "Kansas courts do not reflexively order liable defendants to pay the full amounts billed by the health care providers to injured plaintiffs. Kansas courts instead have typically based the value of damages on the reasonable expense of treatment." *Id.* at 221. The *Martinez* Court then cited to the Kansas Automobile Injury Reparations Act, which provides that " 'the charges actually made for medical treatment expenses shall not be conclusive as to their reasonable value,' " and that " '[e]vidence that the reasonable value thereof was an amount different from the amount actually charged shall be admissible.' " *Id.* at 222 (quoting K.S.A. § 40–3117) (emphasis omitted). The Court reasoned that evidence relevant to the determination of reasonable value other than the amounts charged "may include write-offs or other acknowledgments that something less than the charged amount has satisfied, or will satisfy, the amount billed." *Id.* Accordingly, the Court held that both the amount originally billed for medical treatment and the reduced amount actually accepted by the medical provider in full satisfaction of the amount billed "are relevant to prove the reasonable value of the medical treatment, which is a question for the finder of fact." *Id.* at 208.

Implicit in the aforementioned holding of the Kansas Supreme Court is that expert testimony or other competent

evidence of the reasonableness is not required for the admission of the medical bills or the reduced amounts accepted as payment thereof. In Kansas, the medical bills standing alone, as well as the accepted payments, are admissible as evidence of the reasonable value of medical treatment. For these reasons, *Martinez*, along with *Robinson* and *Stanley*, are not applicable to the instant case.

### Reduction of Judgment

As previously indicated, at the conclusion of the trial in circuit court on August 16, 2011, the jury returned a verdict in favor of appellee for $535,876.00. Following the trial court's entry of judgment, Brethren filed a Motion for New Trial and to Alter or Amend Judgment ("motion to alter or amend"),[7] seeking, among other things, to have the judgment reduced by the workers' compensation benefits previously received by appellee in the amount of $179,206.97. During argument on the motion on January 13, 2012, appellee agreed to the reduction of the judgment by $179,206.97 for the workers' compensation benefits received as of the time of the trial. However, Brethren's counsel asked the court to reduce the judgment by an additional $56,639.00 in workers' compensation benefits awarded to appellee after the trial. The following exchange occurred:

> [BRETHREN'S COUNSEL]: I'd just like to make sure that the Court is aware that **since the trial, [a] fifty six**

---

7. Although Brethren's motion cites to Rules 2–533 ("Motion for New Trial") and 2–534 ("Motion to Alter or Amend a Judgment—Court Decision") as authority for the relief requested, it is clear that Rule 2–534 applies only to a court trial or decision, not a jury trial. The authority for the "Alter or Amend" portion of Brethren's motion is Rule 2–535(a) ("Revisory Power") and we will treat Brethren's motion as filed under that rule. Of course, if Brethren's motion had been filed within 10 days after the entry of the judgment, its motion under Rule 2–535(a) would have been treated as a motion under Rule 2–534. *See Miller v. Mathias*, 428 Md. 419, 442 n. 15, 52 A.3d 53 (2012) (noting that "a Rule 2–535 motion, if filed within 10 days of the entry of judgment by the court, will be treated as a Rule 2–534 motion" (citations omitted)); *see also* footnote 11, *infra*.

**thousand six hundred dollar award has been entered and nine thousand three hundred and thirty nine of those dollars have been paid in workers['] comp.**

[APPELLEE'S COUNSEL]: **That's accurate, Your Honor.**

THE COURT: Okay. So you want, what's the number you want me to reduce it by?

[APPELLEE'S COUNSEL]: Well, **the number that [appellee] would like to reduce by,** what we feel is accurate **is the amount as of the day of the trial.**

(Emphasis added).

On January 19, 2012, the circuit court entered an amended judgment, reducing the original judgment amount of $535,876.00 to $356,669.03, reflecting the $179,206.97 in workers' compensation received by appellee at the time of trial, but not the additional $56,639.00 awarded thereafter, or the $9,339.00 actually received by appellee between the date of trial and January 13, 2012. In declining to reduce the judgment by the amount awarded or received after trial, the circuit court reasoned that the reduction was limited to the amount of workers' compensation received as of the date of trial, relying on Md.Code (1995, 2011 Repl.Vol.), § 19–513(e) of the Insurance Article ("Ins.") and the court's view that "[w]e have to have some finality to this."

In the instant appeal, Brethren contends that it is not obligated to pay uninsured motorist benefits for the same benefits that appellee is entitled to recover pursuant to workers' compensation law. Thus, according to Brethren, the trial court erred in not deducting an additional $56,639.00 from the judgment for the workers' compensation benefits awarded to appellee after trial.[8] Although its argument may have some merit,[9] Brethren is not entitled to the relief it requests,

---

8. Appellee does not respond to this argument.

9. For the reasons set forth *infra,* we hold that Brethren is not entitled to have the judgment entered against it under its UM policy reduced by

because of the procedural posture of the instant case. We shall explain.

On September 6, 2011, the circuit court entered judgment on the jury's verdict in favor of appellee in the amount of $535,876.00. On September 19, 2011, Brethren filed its motion to alter or amend.[10] Because Brethren's motion was not filed within ten days after the entry of the judgment, the time for filing a notice of appeal was not extended to 30 days after the disposition or withdrawal of such motion. *See Pickett v. Noba, Inc.*, 122 Md.App. 566, 570, 714 A.2d 212 (1998) ("If parties file a motion for new trial or a motion to alter or amend more than ten days after judgment, the time for filing an appeal will not be stayed."). In other words, Brethren was required to file a notice of appeal on or before October 6, 2011. *See* Md. Rule 8–202(a).

Brethren, however, did file a timely notice of appeal on October 6, 2011. The timely filing of an appeal had a profound effect on the authority of the trial court to decide Brethren's motion to alter or amend. In *Unnamed Attorney*

---

any future workers' compensation benefits that will be received by appellee. Accordingly, any merit to Brethren's argument on post-trial workers' compensation benefits is limited to the amount of such benefits ($9,339.00) actually received by appellee between the time of trial and the time of the court's ruling on Brethren's motion to alter or amend, not the workers' compensation *award* of $56,639.00 to appellee after trial.

10. On October 13, 2011, Brethren filed a motion to establish the filing date for the motion to alter or amend as September 16, 2011, instead of September 19, 2011, claiming that the motion had been delivered to the circuit court at 5:55 p.m. on Friday, September 16, 2011, and had been placed in the court's after-hours box, but the clerk's office incorrectly stamped the motion as filed on Monday, September 19, 2011, and entered the incorrect date in the docket entries for the instant case. There is no indication in the record that the trial court ever ruled on Brethren's motion. In the absence of a court order changing the filing date from September 19 to September 16, we must accept the date of filing as the one entered in the docket entries of the case, namely, September 19, 2011. *See Estime v. King,* 196 Md.App. 296, 304, 9 A.3d 148 (2010) (noting that "docket entries are presumptively correct, and will be considered dispositive evidence of when a paper was filed in court").

*v. Attorney Grievance Commission,* 303 Md. 473, 494 A.2d 940 (1985), the Court of Appeals discussed the effect of the filing of a timely appeal on a pending motion under Rule 2–535(a) that was filed more than 10 days after a judgment, but within 30 days of the judgment. The Court said:

A motion filed more than ten days after a judgment but within thirty days of the judgment, under Rule 2–535(a), would still have no effect upon the running of the thirty-day appeal period. **When such a motion is filed, and while it is pending an appeal is filed, appellate jurisdiction attaches and the circuit court cannot decide the motion.** *See* P. Niemeyer and L. Richards, *Maryland Rules Commentary* 321–325 (1984). But where a motion is filed within ten days, an appeal will not ordinarily lie until the trial judge rules on the motion.

*Id.* at 486, 494 A.2d 940 (emphasis added).

Unfortunately, Maryland appellate opinions have not been clear in their articulation of the meaning of the phrase "the circuit court cannot decide the motion." On one hand, in *Nina & Nareg, Inc. v. Movahed,* 369 Md. 187, 798 A.2d 557 (2002), the Court of Appeals addressed the same issue as in *Unnamed Attorney,* albeit in the context of the district court's revisory power under Rule 3–535. After observing that the "[c]ase law concerning the application of Rules 2–534 and 2–535 is applicable to Rules 3–534 and 3–535 and vice versa," *id.* at 194, n. 4, 798 A.2d 557, the Court held:

[I]f a motion to amend is filed after ten days but within thirty days pursuant to the revisory power of Rule 3–535, **a notice of appeal** filed either *before* or *after* the motion to amend is filed, but within the thirty-day period required for a notice of appeal, **would divest the trial court of jurisdiction** to rule on the Rule 3–535 motion to amend.

*Id.* at 200, 798 A.2d 557 (emphasis added); *see* P. Niemeyer & L. Schuett, *Maryland Rules Commentary* 460 (3d ed. 2003) ("If any party files an appeal during the pendency of a motion to revise filed more than 10 days after judgment, the notice of appeal ousts the trial court of jurisdiction to decide the

motion[.]"). On the other hand, in the recent case of *Kent Island, LLC v. DiNapoli,* 430 Md. 348, 61 A.3d 21 (2013), the Court of Appeals expressly disapproved of this Court's statement that the circuit court was " 'divest[ed] . . . of jurisdiction' during the pendency of the appeal." *Id.* at 360, 61 A.3d 21. The Court went on to say that

> trial courts retain fundamental jurisdiction over a matter despite the pendency of an appeal. Thus, a trial court may continue ordinarily to entertain proceedings during the pendency of an appeal, so long as the court does not exercise its jurisdiction in a manner affecting the subject matter or justiciability of the appeal.

*Id.* (citations omitted); *see also Jackson v. State,* 358 Md. 612, 620, 751 A.2d 473 (2000); *State v. WBAL–TV,* 187 Md.App. 135, 151–52, 975 A.2d 909 (2009); *Folk v. State,* 142 Md.App. 590, 596–97, 791 A.2d 152 (2002).

The above ambiguity is resolved when we scrutinize the meaning of the term "jurisdiction." In *County Commissioners of Carroll County v. Carroll Craft Retail, Inc.,* 384 Md. 23, 44, 862 A.2d 404 (2004), the Court of Appeals stated: "The term 'jurisdiction' can have different meanings, however, depending upon the context in which it is used. It can refer to either i) the *power* of a court to render a valid decree, or ii) the *propriety* of granting the relief sought." (Alterations, citations, and internal quotation marks omitted) (emphasis in original). The first kind of jurisdiction ("power") has been denominated by the Court as "fundamental jurisdiction" and refers to "the power to act with regard to a subject matter which 'is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred.' " *Pulley v. State,* 287 Md. 406, 416, 412 A.2d 1244 (1980) (quoting *Cooper v. Reynolds' Lessee,* 77 U.S. (10 Wall.) 308, 316, 19 L.Ed. 931 (1870)). "Thus, the main inquiry in determining 'fundamental jurisdiction' is whether or not the court in question had general authority over the class of cases to which the case in question belongs." *Carroll Craft Retail,* 384 Md. at 45, 862 A.2d 404.

The second kind of jurisdiction ("propriety") refers to whether it is appropriate for the trial court to exercise the fundamental jurisdiction that it possesses. *See Carroll Craft Retail,* 384 Md. at 45, 862 A.2d 404 ("Maryland Rule 8–203 confers upon the Circuit Court the power to strike notices of appeal, but limits the exercise of that power to certain circumstances."); *In re Emileigh F.,* 355 Md. 198, 202, 733 A.2d 1103 (1999) ("We are not here talking about the concept of fundamental jurisdiction, but rather the propriety of the exercise of that jurisdiction."). The right of a trial court to exercise its fundamental jurisdiction may be "interrupted" or limited by (1) statute, (2) Maryland rule, (3) the posting of an appeal bond or bail following a conviction and sentence, (4) a stay granted by an appellate court, or by the trial court itself, or (5) case law. *See Pulley,* 287 Md. at 417, 412 A.2d 1244; *Carroll Craft Retail,* 384 Md. at 45, 862 A.2d 404. Stated another way, "power" refers to whether a trial court *can* decide a case, while "propriety" refers to whether a trial court *should* decide a case.

When "power" and "propriety" are considered in the context of the pendency of an appeal, the reference made in previous Maryland appellate opinions to "divesting" a trial court of jurisdiction concerns the second kind of jurisdiction, *i.e.,* the propriety of the exercise of the trial court's fundamental jurisdiction. In *Pulley,* the Court of Appeals stated that the pendency of an appeal did *not* mean that the fundamental jurisdiction of the trial court

> ceased to exist or was transferred to the appellate court; rather, it is our view that the general use of the term "jurisdiction" was merely an indication that the trial court, from which the appeal had been taken, was prohibited from re-examining the decision or order upon which the appeal was based.

287 Md. at 417, 412 A.2d 1244.

In sum, when an appeal is pending, the trial court retains its fundamental jurisdiction over the case, but its right to exercise such power is limited. The Court of Appeals has

articulated this limitation in a variety of ways that are substantively the same: the trial court can "not exercise its jurisdiction in a manner affecting the subject matter or justiciability of the appeal," *Kent Island, LLC,* 430 Md. at 361, 61 A.3d 21; the circuit court "was certainly prohibited from exercising its jurisdiction in a way that would affect the subject matter of the appeal or appellate proceeding," *Carroll Craft Retail,* 384 Md. at 45, 862 A.2d 404; the trial court may not exercise its jurisdiction in a manner that, "in effect, precludes or hampers the appellate court from acting on the matter before it," *Jackson,* 358 Md. at 620, 751 A.2d 473; "a trial court may not act to frustrate the actions of an appellate court," *In re Emileigh F.,* 355 Md. at 202, 733 A.2d 1103; and "the trial court may continue to act with reference to matters not relating to the subject matter of, or matters not affecting, the appellate proceeding," *State v. Peterson,* 315 Md. 73, 80, 553 A.2d 672 (1989).

 Returning to the case *sub judice,* the factual scenario is presented where a motion under Rule 2–535(a) was filed more than 10 days, but less than 30 days, after the entry of the judgment, followed by the filing of a timely notice of appeal. *Unnamed Attorney* teaches that during the pendency of the appeal, "the circuit court cannot decide the motion." 303 Md. at 486, 494 A.2d 940. As we have discussed, such phrase means that, although the circuit court ordinarily retains the "fundamental jurisdiction" to decide a post–10 day Rule 2–535(a) motion, the court should not exercise its jurisdiction to decide the motion. The reason for this prohibition is simple. If the trial court exercises its fundamental jurisdiction to revise or amend the judgment that is the subject of an appeal, the revision or amendment of the judgment will affect, in most cases, "the subject matter or justiciability of the appeal." *See Kent Island, LLC,* 430 Md. at 361, 61 A.3d 21. Therefore, as a general rule, where a motion under Rule 2–535(a) is filed more than 10 days, but less than 30 days, after the entry of a judgment and a timely notice of appeal is filed either before or after that motion, the circuit court should not decide the motion.

■■■ But in the instant case, the circuit court, with the agreement of the parties, held a hearing on Brethren's motion to alter or amend, ruled on the motion, and amended the judgment. The question then presented is, what is the legal status of the amended judgment—is it valid or void? The distinction between fundamental jurisdiction ("power") and the exercise of that jurisdiction ("propriety") informs the resolution of that question. Where the trial court lacks "fundamental jurisdiction," any action taken by it "is a nullity, for an act without such jurisdiction is not to act at all." *Pulley*, 287 Md. at 416, 412 A.2d 1244. By contrast, if a trial court's ruling on a post-judgment motion affects the subject matter of a pending appeal, it " 'may be subject to reversal on appeal, but it is not void *ab initio* for lack of jurisdiction to enter it.' " *Cottman v. State*, 395 Md. 729, 742, 912 A.2d 620 (2006) (quoting *Jackson*, 358 Md. at 620, 751 A.2d 473); *see Kent Island, LLC*, 430 Md. at 361, 61 A.3d 21 (stating that, "[e]ven if a trial court [exercises its jurisdiction in a manner affecting the subject matter or justiciability of the appeal], such a ruling is not void for lack of jurisdiction, but is instead reversible on appeal."); *Downes v. Downes*, 388 Md. 561, 575, 880 A.2d 343 (2005) (stating that "rulings made in violation of statutory restrictions on a court's authority or discretion as inappropriate *exercises* of jurisdiction [are regarded as] voidable on appeal, rather than as an inherently void excess of fundamental jurisdiction itself") (emphasis in original); *Carroll Craft Retail*, 384 Md. at 45, 862 A.2d 404 (stating that "[a]ny ruling to that effect, however, was reversible on appeal, not void for lack of jurisdiction"). Therefore, the trial court's entry of an amended judgment in the instant case, as a result of its ruling on Brethren's motion to alter or amend, was valid, yet subject to reversal on appeal if it affected "the subject matter or justiciability of the appeal." *Kent Island, LLC*, 430 Md. at 361, 61 A.3d 21.

In the instant appeal, Brethren asks this Court to reverse the trial court's ruling on its motion to alter or amend, not because such ruling affected the subject matter or justiciability of the appeal, but because the court allegedly erred in

failing to reduce the judgment in favor of appellee by the amount of workers' compensation benefits awarded to appellee after the trial. In other words, Brethren seeks our review of the merits of the trial court's ruling on its motion to alter or amend. We, however, cannot review the trial court's ruling on Brethren's motion to alter or amend, either on the merits or on its effect, if any, on the subject matter or justiciability of the appeal, because Brethren never filed a notice of appeal from the entry of the amended judgment.

 It is clear that a notice of appeal must be filed within 30 days after the entry of the trial court's ruling on a motion filed more than 10 days after entry of a judgment for this Court to have jurisdiction to review such ruling.[11] For example, in *Carroll Craft Retail*, the circuit court entered an order reversing the judgment of the district court, to which the county filed a notice of appeal to this Court. 384 Md. at 32, 862 A.2d 404. Thereafter, the appellee filed a motion to strike the appeal, which the trial court granted. *Id.* at 32–34, 862 A.2d 404. The county, however, never filed an appeal from the order striking its appeal. *Id.* at 34, 862 A.2d 404. Unaware of the circuit court's order striking the county's appeal to this Court, the Court of Appeals granted *certiorari* on the county's appeal to this Court. *Id.* at 36, 862 A.2d 404. The Court of Appeals stated that, although the trial court erred in striking the notice of appeal, "it acted within its general authority to strike notices of appeal when it issued its ruling." *Id.* at 45, 862 A.2d 404. The Court went on to hold:

If the county desired to challenge the Circuit Court's order ... it was required to note an appeal. When it failed to do so within the 30 days allowed, the order became final; the appeal was dismissed. Thus, when we issued a writ of

---

11. By contrast, a notice of appeal filed within 30 days after the entry of the trial court's ruling on a timely motion filed under Rule 2–533 or 2–534, or a motion filed within 10 days after entry of judgment under Rule 2–535(a), confers on this Court the authority to review the ruling on such post trial motion, as well as the earlier judgment. *See B & K Rentals and Sales Co. v. Universal Leaf Tobacco Co.*, 319 Md. 127, 132–33, 571 A.2d 1213 (1990).

*certiorari* on May 14, 2004 in Appeal No. 1376, that appeal was no longer pending in the Court of Special Appeals. There is nothing for us to review.

*Id.* at 45–46, 862 A.2d 404 (ellipsis in original); *see Cottman,* 395 Md. at 740 n. 10, 912 A.2d 620 (reaffirming that, "the appellate court has no power to vacate an order where there is no appeal of that order"); *see also* P. Niemeyer & L. Schuett, *Maryland Rules Commentary* 461 (3d ed. 2003) ("While a motion to revise filed more than 10 days after judgment does not stay the appeal time on the original judgment, the denial of the motion itself is appealable."). Therefore, the issue of whether the trial court erred in failing to reduce the original judgment in favor of appellee by the $56,639.00 in workers' compensation benefits awarded to appellee after trial, or such benefits actually received by appellee between the time of trial and the time of the ruling on Brethren's motion to alter or amend, is not before us for appellate review.

### *Future Workers' Compensation Recovery*

Brethren contends that the trial court erred in entering judgment in favor of appellee, reasoning that "there was no breach of contract because [appellee] remained entitled to recover from workers' compensation the same damages he was suing [Brethren] for." Brethren concludes that the language of the insurance contract prevents appellee from showing a contractual obligation owed, because appellee continues to have an entitlement to workers' compensation benefits.

Appellee responds that the "trial court followed Maryland law by reducing the jury award in appellee's favor by the amount he had recovered in Worker[s'] Compensation benefits." According to appellee, Ins. § 19–513(e) "clearly states that the benefits payable under UM coverage shall be reduced to the extent the recipient *'has recovered'* (past tense) under workers' compensation laws." (Emphasis added). We agree with appellee.

In our view, this issue is controlled by the Court of Appeals' opinion in *Gable v. Colonial Insurance Co. of California,* 313

Md. 701, 548 A.2d 135 (1988). In *Gable,* the appellant was injured in an automobile accident during the course of her employment. *Id.* at 702, 548 A.2d 135. Although the appellant filed a workers' compensation claim, she never pursued the claim and never received any workers' compensation benefits. *Id.* The appellant later filed a claim for personal injury protection ("PIP") benefits with her automobile insurer, the appellee, which the insurer refused to pay. *Id.* The insurer refused to pay benefits, because the PIP policy excluded benefits for injuries "occurring during the course of employment if benefits are payable or must be provided under a workers' compensation law or similar law." *Id.* The appellant filed suit against the insurer in the District Court of Maryland for Baltimore County, seeking to recover $978.55 in PIP benefits. *Id.* at 703, 548 A.2d 135. Following entry of judgment in favor of the insurer based on the PIP policy exclusion, the appellant appealed to the circuit court. *Id.* The circuit court then granted the insurer's motion for summary judgment on the same ground. *Id.*

The Court of Appeals granted *certiorari* and reversed the judgment of the circuit court. *Id.* at 710, 548 A.2d 135. In its opinion, the Court construed the language of Md.Code Art. 48A § 543(d), the statutory predecessor provision to Ins. § 19–513(e). *Id.* at 704, 548 A.2d 135. Section 543(d) provided: " 'Benefits payable under the coverages required in [the PIP provision] . . . shall be reduced to the extent that the recipient *has recovered* benefits under workmen's compensation laws of any state or the federal government.' " *Id.* (emphasis added).

The Court of Appeals reasoned that section 543(d)

**shows a legislative intent to provide offsets only for workmen's compensation benefits actually received and not for future benefits.** The subsection provides for a deduction only for workmen's compensation benefits that the claimant "has recovered." **The General Assembly drew a sharp distinction between workmen's compensation benefits which have been received and those benefits which have not.** To allow a deduction for unrecovered benefits would insert an additional exception to the provi-

sion mandating PIP coverage. As a matter of statutory construction, where the Legislature has required specified coverages in a particular category of insurance, and has provided for certain exceptions or exclusions to the required coverages, additional exclusions are generally not permitted. *Id.* (emphasis added).

In addition to the statutory language prohibiting a deduction for unrecovered workers' compensation benefits, the Court said that, "it would be contrary to the policies underlying the provision for mandatory PIP benefits. The primary purpose of the statutory provisions is to promote certain and prompt recovery." *Id.* at 708, 548 A.2d 135. The Court of Appeals concluded by holding that only workers' compensation *actually received* may be deducted from PIP benefits and that, "[t]o the extent that the insurance policy exclusion in the case at bar is inconsistent with this holding, it is void." *Id.* at 710, 548 A.2d 135.

As indicated, one of the grounds for the Court of Appeals' decision in *Gable* was the construction of the language of section 543(d). That provision was recodified in Ins. § 19–513(e), without substantive change. *See* 1996 Md. Laws, Chap. 11. Section 19–513(e) reads:

> (e) *Reduction due to workers' compensation benefits.*—Benefits payable under the coverages described in §§ 19–505 and 19–509 of this subtitle shall be reduced to the extent that the recipient has recovered benefits under the workers' compensation laws of a state or the federal government for which the provider of the workers' compensation benefits has not been reimbursed.

*Id.*

Sections 19–505 and 19–509 of the Insurance Article are the statutory provisions governing PIP benefits and UM coverage, respectively. In *Gable,* the Court of Appeals interpreted statutory language identical to that of § 19–513(e) to mean that the General Assembly intended for only workers' compensation benefits that *have been received* (not future benefits) to be reduced from PIP benefits. *See* 313 Md. at 710, 548 A.2d

135. Because the General Assembly used the same language to provide for a reduction of workers' compensation benefits from benefits payable under UM coverage, we see no reason why the Court of Appeals' construction should not apply with equal force to any recovery of benefits under a UM policy.

Our view of *Gable* was confirmed by the Court of Appeals in its recent opinion in *TravCo Insurance Co. v. Williams*, 430 Md. 396, 61 A.3d 50 (2013). In *TravCo*, the Court was asked to answer the following certified question of law:

> [W]hether [Ins. § 19–513(e) ] requires an insurance company to deduct recovered workers' compensation ("WC") benefits from the benefits payable to an insured for uninsured motorist coverage ("UM") and personal injury protection ("PIP") when the insured has not reimbursed its WC provider, the WC provider claims the insured will need to reimburse it from any UM or PIP recovery, and the insured intends to reimburse the WC provider in the future.

*Id.* at 399, 61 A.3d 50.

To resolve this question, the Court was required to construe the clause of Ins. § 19–513(e) that provides for a reduction in the PIP or UM benefits for workers' compensation benefits recovered by the insured "for which the provider of the [WC] benefits *has not been reimbursed.*" *Id.* at 401, 61 A.3d 50 (alteration in original) (emphasis added). In the course of its analysis, the Court reviewed its earlier cases interpreting Ins. § 19–513(e) (or its statutory predecessor, section 543(d)). Regarding *Gable*, the *TravCo* Court said:

> **In that case, an insurance company claimed that its policy provision which stated that it could deduct PIP benefits by the amount the insured *may be entitled to recover in the future under WC law*, allowed it to deduct the WC benefits the insured would have gotten, even though the insured party never received such WC benefits. *Gable*, 313 Md. at 702, 548 A.2d at 135–36. We explained that the term "has recovered" in the statute, referred, in the past tense, to WC benefits "actually received."** Further, we noted that

> [t]he language of § 543(d) shows a legislative intent to provide offsets only for workmen's compensation benefits actually received and not for future benefits. The subsection provides for a deduction only for workmen's compensation benefits that the claimant "has recovered." The General Assembly drew a sharp distinction between workmen's compensation benefits which have been received and those benefits which have not.

*Gable,* 313 Md. at 704, 548 A.2d at 136–37. This statute, we explained, stood in sharp contrast to the language in similar statutes in other states, allowing, for example, benefits to be reduced for WC benefits "recovered or *recoverable." See Gable,* 313 Md. at 706, 548 A.2d at 137–38 (citing N.Y. Ins. Law § 5102(b)(2) (Consol.1985)). "[T]he absence of the word 'recoverable' in the Maryland statute indicates that in Maryland the insurer's right to offset workmen's compensation benefits is contingent upon their receipt." *Gable,* 313 Md. at 706, 548 A.2d at 138. **As such, we held that the insurer could not reduce its PIP payout by the WC amount that the insured never received.**

430 Md. at 406–07, 61 A.3d 50 (emphasis added).

After stating that the language of Ins. § 19–513(e) is clear and unambiguous, defining the word "reimbursement" as "repayment," and noting that "the clause for which we are interpreting is phrased in the present perfect verb tense," the Court concluded that "the phrase 'has not been reimbursed,' means that the reimbursement has not yet occurred." *Id.* at 409, 61 A.3d 50. The Court found further support for this conclusion by reference to *Gable,* stating:

> Additionally, the phrase "has not been reimbursed" mirrors other language in the statute that we have interpreted in the past. Specifically, **in *Gable,* we explained that the term "has recovered," referred to WC benefits "actually received ... not [ ] future benefits[,]" and that the use of the term "has recovered," coupled with the absence of the word "recoverable" in the statute "indicate[ ] that ... the insurer's right to offset [WC] benefits is contingent upon [the insured's] receipt [of the WC benefits]."**

*Gable,* 313 Md. at 704, 706, 548 A.2d at 136–38. Following this method of interpretation, in the present case, the WC provider must have been actually reimbursed, and mere reimbursement in the future is insufficient under the statute.

*Id.* at 409–10, 61 A.3d 50 (emphasis added).

Therefore, under the teachings of *Gable* and *Trav-Co,* an insurer may reduce the benefits due under an uninsured motorist policy by the workers' compensation benefits actually received by the insured, and not by the amounts that the insured may be entitled to recover in the future under the workers' compensation laws. Accordingly, we hold that Brethren is not entitled to have the judgment entered against it under its UM policy reduced by any future workers' compensation benefits that will be received by appellee. To the extent that the language of Brethren's UM policy is inconsistent with this holding, it is void.

In its reply brief, Brethren claims that, if the trial court's decision is allowed to stand, appellee "will succeed in obtaining a double recovery." Brethren explains that, under Md.Code (1991, 2008 Repl.Vol.), §§ 9–902(c) & 9–903 of the Labor and Employment Article ("LE"), if an injured party is "awarded a judgment in the tort case and subsequently [is] awarded workers' compensation benefits, the workers' compensation provider would not be required to pay until [appellee]'s entitlement to workers' compensation benefits exceeded the amount of the tort judgment." Brethren contends that such rule would not apply to the instant case, thus allowing appellee to receive the judgment entered on the jury's verdict plus any future workers' compensation benefits awarded to him.

We disagree that LE §§ 9–902(c) & 9–903 would not apply to the instant case to preclude a double recovery for future workers' compensation benefits received by appellee. LE § 9–902(c) permits a covered employee, under certain circumstances, to "bring an action for damages against [a] third party." A third party is defined as the party "who is liable for the injury or death of the covered employee." LE § 9–902(a).

LE § 9–903 then provides that the amount received in such action "is in place of any award that otherwise could be made under" the workers' compensation law, unless the amount received in a tort action is less than the amount of workers' compensation benefits to which the covered employee is entitled. Because an insurance carrier under a UM policy steps into the shoes of the tortfeasor, Andrew Janquitto, *Maryland Motor Vehicle Insurance* 324 (3d ed.2011), and a plaintiff must prove his or her negligence claim against the tortfeasor in order to recover under such policy, it follows that the "third party who is liable for the injury or death of the covered employee" under LE §§ 9–902(a), (c) & 9–903 includes both the tortfeasor and the insurance carrier under a UM policy. *See Kritsings v. State Farm Mut. Auto. Ins. Co.*, 189 Md.App. 367, 376, 984 A.2d 395 (2009) (noting that an injured insured can maintain actions against both a tortfeasor and a UM carrier). Brethren has not cited to any authority, nor have we found any, that is contrary to this conclusion. Thus, our affirmance of the trial court's judgment will not result in a double recovery by appellee of future workers' compensation benefits.

For the foregoing reasons, Brethren breached its policy with appellee's employer by failing to pay UM benefits due to appellee, and the trial court properly entered judgment on the jury verdict (less the workers' compensation benefits actually received by appellee as of the date of trial).[12]

---

**12.** After oral argument before this Court, Brethren filed a Motion Concerning Relevant Law Issued by the Court of Appeals on February 25, 2013. In that motion, Brethren cites to *TravCo Insurance Co. v. Williams*, 430 Md. 396, 61 A.3d 50 (2013), not for the principles discussed earlier in this opinion, but for the Court's holding on a separate issue—namely, "whether, assuming that the law applicable to the underlying automobile accident and to the WC claim treats 'write-downs' of medical bills as WC benefits, such 'write-downs' would reduce the benefits payable under § 19–513(c) of the Insurance Article." *Id.* at 412, 61 A.3d 50. The Court held that, "[a]ssuming, *arguendo,* that the 'write-downs' were the actual benefits paid out by the WC provider and recovered by [the insured] under the WC laws of the District of Columbia, the UM benefits, which [the insured] is entitled to receive, shall be reduced to the extent that the 'write-downs' were un-

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. APPELLANT TO PAY COSTS.

---

reimbursed." *Id.* Brethren claims that under *TravCo*, the judgment in the instant case should be reduced by the "write-offs" in appellee's medical bills, totaling $69,248.12.

Brethren, however, acknowledges that "a reduction for write-offs was not requested in the trial court." Nor was the issue raised in Brethren's opening brief in this Court. Given the clear lack of preservation of this issue, as well as the fact that the holding of *TravCo* on this issue is based on the *assumption* that under the workers' compensation laws of the District of Columbia, not Maryland, the "write-downs" were actual benefits paid out by the WC provider and recovered by the insured, we decline to address the issue raised by Brethren. Accordingly, we will deny the motion.